FLORIDA CENT. & P. R. CO. v. AMERICAN SURETY CO. OF NEW YORK.

(Circuit Court of Appeals, Second Circuit. January 24, 1900.)

No. 3.

1. INDEMNITY INSURANCE—FIDELITY OF EMPLOYES—CONSTRUCTION OF CONTRACT.
    A surety company issued to a railroad company a bond by which it agreed to indemnify the latter against loss by reason of the dishonesty or culpable negligence of its employés, who were named, and the amount of indemnity as to each stated, in a schedule. The liability was limited to losses which should occur and be discovered during the continuance of the contract, and the bond contained the following provision: "And it is agreed further that the company, upon the execution of a stipulated amount of risk or insurance under the terms of this bond in behalf of any employé, shall not thereafter be responsible to the employer under any previous insurance of said employé, it being mutually understood that it is the intention of this provision that but one (the last) insurance of the employé shall be in force at one time, unless otherwise provided." At the end of each year after the issuance of such bond a new schedule of employés was furnished by the employer, accepted by the company, and a new premium paid, based thereon. The bond stated no time of its duration, but the notice of acceptance of each subsequent schedule stated the term of insurance to be for one year. Held, that the bond was not a continuing contract from year to year, but that a new contract was made annually; and on each renewal under the above provision the liability of the insurer for any past and undiscovered defalcation of an employé terminated.

2. SAME.
    · A contract by a surety company to indemnify an employer against loss by reason of the dishonesty or culpable negligence of its employés limited

the liability of the company to such losses as should occur during the continuance of the contract, and should be discovered "during said continuance, and within six months after the death, dismissal, or retirement of the employé causing such loss. *Held* that, at the expiration of the year for which indemnity was given, the liability of the company ceased as to an undiscovered loss caused by an employé who still remained in the position in which his fidelity had been guarantied, although he subsequently died, and the loss was discovered within six months thereafter.

In Error to the Circuit Court of the United States for the Southern District of New York.

George Zabriskie and J. Archibald Murray, for plaintiff in error.

Henry L. Stimson and Henry C. Willcox, for defendant in error.

Before WALLACE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The American Surety Company of New York issued on March 14, 1891, for a valuable consideration, to the Florida Central & Peninsular Railroad Company, a bond of indemnity against loss through the defalcation of its employés, who were to be named, among whom was W. Naylor Thompson, its treasurer. The railroad company was insured against loss by his dishonesty or culpable negligence in the sum of $25,000. In an action at law in the circuit court for the Southern district of New York upon this bond by the railroad company against the surety company to recover the amount of the defalcations which will hereafter be specified, a verdict for the defendant was directed by the court, and to review the judgment which was entered upon the verdict this writ of error was brought.

Before March 14, 1891, the surety company had annually, while it was insuring the plaintiff, issued to it a new bond of indemnity, but after the date of the bond in suit no new and separate bond was issued. The bond provided as follows:

"Whereas, the employer has in its service certain employés, whose names, occupations, and locations appear in the schedule register marked 'Florida, Central and Peninsular Railroad Company Bond Record with the American Surety Company of New York,' and which is hereby made a part of this bond; and whereas, the employer requires security for the performance of the duties devolving on said employés in the respective capacities to which they now are or may hereafter be assigned by said employer; and whereas, the employer may hereafter require like security for other employés who now are or may hereafter be engaged in its service, and whose names may, in the manner hereinafter indicated, be inserted in said schedule register:

"Now, therefore, in consideration of the payment of forty cents, annual premium for each one hundred dollars of security required of the company by the employer, it is hereby agreed that, subject to the conditions herein contained, the company does hereby insure the employer to the extent of the insurance on each employé against any and all pecuniary loss sustained by the employer of money, securities, or other personal property in the possession of said employés, or for the possession of which any of them is responsible, by dishonesty or culpable negligence on the part of any of said employés in the positions hereinbefore referred to, or the duties in the employer's service which he may hereafter be called upon to perform during the continuance of his insurance under this bond, and which loss shall be discovered during said continuance and within six months after the death, dismissal, or retirement of the employé causing such loss; but in no event shall the company be liable for a greater sum than that for which the insurance on the defaulting employé is granted, and which insurance, and the period thereof, are stated

in the schedule register hereinbefore mentioned, opposite each employé's name; and the company shall pay to the employer within sixty days from the receipt of a satisfactory proof of a loss under this bond the amount of said loss, but not exceeding the extent of the insurance on the employé or employés whose dishonesty or culpable negligence occasioned such loss: provided, that the company shall not be liable under this bond for the amount of any balance that may be found due the employer from the employé, and which may have accrued prior to the date of said insurance. and which may be discovered within the period of said insurance, it being the true intent and meaning of this bond that the company shall be responsible as aforesaid, for money, securities, or other personal property diverted from the employer within the period specified in said insurance.

"And it is agreed further that the company, upon the execution of a stipulated amount of risk or insurance under the terms of this bond in behalf of any employé, shall not thereafter be responsible to the employer under any previous insurance of said employé, it being mutually understood that it is the intention of this provision that but one (the last) insurance of the employé shall be in force at one time, unless otherwise provided. [This paragraph is known in the case as "Lines 62 to 66."]

"The right to make any claim under this bond shall cease at the expiration of six months from the date at which the defaulting employé shall cease to be in the service of the employer, or the date on which the company may elect to terminate the insurance on such employé as hereinafter provided."

The surety company furnished to the railroad company a book called the "Schedule Register," and had in its office a copy or abstract of this book, in which were entered the names, occupations, and locations of the employés for whose conduct security was required, and the amount of the indemnity which was agreed to be furnished. At the expiration of each year from and after March 14, 1891, until March, 1895, the railroad company made out a new and similar schedule of the employés against whose misconduct they were to be indemnified, and the amount of insurance for each, paid the annual premium, and forwarded the schedule, or a copy of it, to the surety company, which accepted the same, and gave a notice of acceptance. The last notice, dated March 8, 1895, which was substantially like the preceding notices, was as follows:

"You are informed that, subject to the conditions of the guaranty contract executed March 14, 1891, by the American Surety Company of New York to the Florida Central & Peninsular Railroad Co., the said American Surety Company hereby guaranties the employés of the said railroad company as follows, and from the dates herein specified, to March 15, 1896."

Thompson continued to be insured until March 15, 1896. The railroad company applied as usual in March, 1896, for new insurance, but, as the surety company required an increase of rate, no renewal was had. On June 10, 1896, Thompson was taken ill. The railroad company notified the surety company in July of the discovery of defalcations by him. He ceased to be treasurer on August 1st, and died in September, or early in October, 1896. Suit was brought within the time limited in the policy upon a claim consisting of four alleged misappropriations amounting to $6,157.86. The claim consists of four items, amounting altogether to $6,157.86. The first item is for $3,310.22, which is the amount of a collection voucher dated September 1, 1894, representing moneys misappropriated on or before that date. The second item is for $1,000, paid to Thompson on a check drawn in favor of himself, by himself as treasurer, on

March 8, 1895. The third item is for $800, alleged to have been paid to and misappropriated by Thompson on December 15, 1893. The fourth item is for $1,047.64, representing the amount which Thompson was alleged to be indebted to his petty cash account on August 1, 1896, for various advances which he made to himself out of the railroad company's money during his incumbency as treasurer. The first three of these items were for moneys taken by Thompson, if at all, prior to March 15, 1895, the date of the beginning of the last year of the insurance; and none of the four items were discovered by the plaintiff, or any of its officers, until three or four months after March 15, 1896. The defendant contends that none of these alleged losses fall within the terms of the contract of insurance, because the first three items did not occur within the last period from March 15, 1895, to March 15, 1896, and because none of the items were discovered until after March 15, 1896. The plaintiff insists that the guaranty of Thompson's fidelity was effected by the bond of March 14, 1896, that the contract was a continuing one through the payment of an annual premium so long as his name remained in the schedule register, and was a continuing indemnity for Thompson's losses which occurred at any time after March 14, 1891. It is evident that it must have been known by the railroad company that the intention of the contract was to make the indemnity of a limited character, and it is also plain that the contract was blindly and clumsily drawn, but, so far as it relates to the circumstances of this case, we think it is capable of being understood. The bond states no time of its duration, and gives the name of no person for whose conduct there is to be an indemnity. To make the contract intelligible, it must be read in connection with the schedule register and the notices of acceptance, and from them it appears that annually a new list of employés was entered on the schedule, which was sent to the surety company, and was accepted by it as the list of employés whose fidelity was to be guarantied from the date of the termination of the pre-existing contract to March 15th of the succeeding year. Some of the names of a preceding list had probably disappeared. New names had taken the places of those who had been dropped, and a new annual premium had been paid for those whose names were on the new schedule. The course of business between the parties, as well as the bond itself, shows that there is to be an annual designation of employés upon the schedule, and an annual selection and acceptance of the names by the surety company, and that the new schedule will, in all probability, contain the names of employés whose fidelity had been guarantied by a previous contract. Such being the case, the meaning of the part of the contract which declares that upon the execution of a stipulated amount of risk or insurance in behalf of an employé the company shall not be responsible under any previous insurance of said employé becomes clear, and is that, when a new schedule of the amount of insurance in behalf of any employé formerly on the schedule has been executed or completed, and actually or constructively accepted, the old or previous insurance against losses previously committed by him is at an end, and that for these losses the company is no longer liable.

The contract further declares that only the last insurance of the employé shall be in force at one time. These provisions are inconsistent with the theory that it was the intention or the idea of the parties that a continuing liability for old and undiscovered losses in continuous previous years was being piled up in each renewed contract. The bond also provides that it is its intent that the surety company shall be responsible "for property diverted from the employer within the period specified in said insurance." The word "insurance" has different meanings in the contract. Sometimes it means the amounts of indemnity, and sometimes it means the contract of insurance. The latter meaning is the one intended in the clause just referred to. For the period specified in the contract of insurance, reference must be had to the two other papers which, with the bond, form the contract, and which indicate very plainly that the liability is confined to losses in the current year. This construction is furthermore shown in the rider attached to the bond in suit, which is as follows:

"Whereas, the schedule bond issued March 15th, 1890, by the American Surety Company of New York, in favor of the Florida Central and Peninsular Railroad Company on certain employés therein mentioned, and others subsequently bonded and guarantied subject to its provisions, expires March 15th, 1891; and, whereas, said bond allows six months from said date of expiration in which to make claims for losses thereunder, the provision contained in lines 62 to 66 of the bond hereto attached, is hereby modified so as to recognize the right of the employer to make claim within six months from the expiration of the bond first mentioned for any loss occurring thereunder, but with the understanding that the aggregate liability of the American Surety Company of New York for the acts of any employé under both the bonds herein mentioned shall not during said period exceed the amount of the last guaranty or bond upon the employé for whose acts a claim may be made."

This rider shows that, unless it had been inserted, the liability, if any, which existed under the bond of 1890, would have disappeared by virtue of the provision contained in lines 62 to 66.

The remaining question of the proper construction of the contract relates to the fourth item, which was discovered three or four months after March 15, 1896, and before Thompson left the service of the railroad company. The contract indemnifies the employer against loss by the dishonesty or culpable negligence of the named employé, which loss shall be discovered during the continuance of his insurance, and within six months after the death, dismissal, or retirement of the employé causing such loss. The loss must be discovered during the year for which indemnity was given, if the employé is still in the position in which his fidelity had been guarantied; but, if the employé died, was dismissed, or retired during the year, it must be discovered within six months after such retirement. Cases may easily be imagined of hardship under the stringent terms of this policy, and what would be the result in case the loss happened during the last days of the life of the contract when discovery was impossible during its life is a question which does not arise here. The loss which is the subject of the fourth item commenced before January, 1, 1896, when there was a balance against Thompson of $1,177.56, and continued until August 1, 1896, when it had been reduced to $1,047.64. He had apparently drawn the railroad's checks for the

payment of his private bills from time to time during the period of his treasurership, but the company's system of audit was very lax, and the state of the cash account was unknown, and not examined,— a condition of affairs which was intended to be guarded against by the narrow terms of the contract of indemnity. Inasmuch as the annual renewal of the contract of indemnity ceased on March 15, 1896, when Thompson was acting as treasurer, the liability ceased as to all losses which had not been discovered. If Thompson had ceased to be treasurer before March 15, 1896, the facts of the case would have corresponded with those in Guarantee Co. of North America v. Mechanics' Sav. Bank & Trust Co., 26 C. C. A. 146, 80 Fed. 766, in which, fifteen days before the employé's yearly insurance ended, he was retired by promotion from the position which he held, and the loss was discovered about three months after his retiracy, in which case the court held that the six months commenced to run at the date of the retirement, and continued without reference to the termination of the annual period,—a conclusion which is justified by the terms of the contract. The judgment of the circuit court is affirmed, with costs.