MARYLAND CASUALTY CO. v. FIRST NAT. BANK OF MONTGOMERY, ALA.

(Circuit Court of Appeals, Fifth Circuit. November 12, 1917. Rehearing Denied January 12, 1918.)

No. 3146.

1. INSURANCE ⊂⇒508½—INDEMNITY INSURANCE—POLICY—CONSTRUCTION.

Defendant executed a bond reciting that, plaintiff desiring security on behalf of certain employés, defendant agreed in consideration of a premium that it would, after satisfactory proofs of loss, reimburse plaintiff for any and all loss of moneys, securities, or other personal property which plaintiff shall have sustained by reason of any acts of fraud, dishonesty, forgery, embezzlement, etc., of any employé. The term of the bond was from April 10, 1913, to January 10, 1914. Attached to the bond was a rider reciting that defendant agreed that claim might be made under the bond according to the terms and conditions thereof, for any loss or losses which plaintiff might during the period between January 10, 1907, and April 10, 1913, sustain on account of any employé specified in the schedule, provided that such employé should be named in the schedule attached to the bond of another surety company, and covered thereby on April 10, 1913; that defendant shall not be liable under its bonds for any loss or losses unless discovered after the expiration of the time within which claim can be made under the bond of such company; and that the aggregate liability of defendant on account of any employés shall in no event exceed the sums set opposite the names of such employés. The amount of defendant's liability for defalcations of a particular employé was $7,500. *Held* that, as the bond and rider bore different dates and it was obvious that the rider was intended to protect plaintiff on account of those defalcations not discovered within the period prescribed by the old bond after it changed surety companies, defendant was under such bond liable for defalcations occurring between January 10, 1907, and January 10, 1914, when the bond should expire, only to the amount of $7,500, and could not be subjected to liability for the amount of $7,500 for defalcations occurring prior to April 10, 1913, and for another similar sum for defalcations occurring thereafter.

2. INSURANCE ⊂⇒508½—INDEMNITY INSURANCE—POLICY—CONSTRUCTION.

In such case, the original bond was a term bond, and a renewal for a new premium for an additional term subjected defendant to liability to the amount of the principal sum for employés' defalcations during that term, notwithstanding it was already liable in that sum under the first bond for defalcations occurring during that period.

**3.** INSURANCE ⊂⇒430—INDEMNITY BONDS.

Where a bond insured a national banking association against losses sustained by reason of any act or acts of fraud, dishonesty, forgery, embezzlement, wrongful abstraction, or willful misapplication on the part of any of its employés (while in any position in the service of the employer and committed directly or through connivance with others), the association is entitled to recover for losses sustained in honoring checks drawn on the account of a bookkeeper, who obtained the honoring of his checks by representing that a check which he deposited to his account, drawn on another bank, was good, when in fact it was worthless; the bond not being limited to defalcations, etc., committed by employés while acting in their capacity as such.

**4.** INSURANCE ⊂⇒540—INDEMNITY INSURANCE.

A bond insuring a national banking association against losses on account of the defalcation, embezzlement, etc., of its employés, provided that notice of any loss covered should be sent to the surety company by telegraph and by registered letter within 10 days after discovery, that an itemized statement of such loss should be filed with the company by the association within 90 days after date of notice, and that, if required, the association should produce for investigation all books, vouchers, and evidence in its possession. The bond insured against losses of money, securities, or other personal property. An individual bookkeeper embezzled funds, his peculations extending over a series of years, and he also caused the association loss by representing a check deposited to his individual account, drawn on another bank, was good, thus inducing the association to honor his checks. The books showing accounts of depositors were kept in loose-leaf ledgers, and after discovery of the bookkeeper's defalcations many of the leaves were found to be missing. The association, having notified the surety company of its loss, in detail described the loss resulting from the check transaction with the bookkeeper, and set out the exact amount claimed to have been lost during each year covered by the bond sued on. *Held* that, as the language of the bond is to be taken most strongly against the insurer and would have to be most explicit to warrant a conclusion that the association's statement of losses should be more particular than proof necessary to recovery, the itemized statement of losses must be deemed sufficient, particularly as the stipulations requiring the association to produce for investigation all books, vouchers, and evidence in its possession indicated the absence of an intention to require the association to state anything which without its fault it was impossible to ascertain.

In Error to the District Court of the United States for the Middle District of Alabama; Henry D. Clayton, Judge.

Action by the First National Bank of Montgomery, Ala., against the Maryland Casualty Company. There was a judgment for plaintiff, and defendant brings error. Reversed, with directions that new trial be granted, unless plaintiff enter remittitur.

This was an action by the First National Bank of Montgomery, Ala., the defendant in error (which will be called the plaintiff), against the Maryland Casualty Company, the plaintiff in error (which will be called the defendant), based upon a bond, having a rider attached thereto, and a renewal receipt, which bond, rider, and renewal receipt were issued by the defendant to the plaintiff and are in words and figures as follows, except that so much of the schedules copied as refers to employés other than Mark Blakely Campbell is omitted:

Schedule Bond.                                    Register No. ———.

### Maryland Casualty Company, Baltimore.

Whereas, First National Bank, Montgomery, Alabama, hereinafter called the "Employer," desires security on behalf of certain persons hereinafter called "Employés."

Now, therefore, for and in consideration of a premium, payable in advance, based upon an annual rate per hundred dollars of suretyship, the Maryland Casualty Company, a corporation of Maryland, hereinafter called the "Company," hereby agrees that it will, within two (2) months after the receipt of satisfactory proofs of loss reimburse the Employer for any and all loss of money, securities or other personal property (including that for which the Employer may be responsible to others), which the Employer shall have sustained by reason of any act or acts of Fraud, Dishonesty, Forgery, Embezzlement, Wrongful Abstraction or Wilful Misapplication on the part of any Employé (while in any position in the service of the Employer and committed directly or through connivance with others) named in the Schedule hereto attached, or hereafter added to said Schedule by an Acceptance Notice executed by the Company. Provided, that the Company's liability on behalf of any Employé shall in no event exceed the amount set opposite to the name of such Employé in the said Schedule or in the said

### Acceptance Notice.

Provided, further, that as to Employés named in the Schedule the Company shall not be liable for any loss occurring before noon on the tenth day of April, 1913, and as to Employés subsequently added to said Schedule by said Acceptance Notices, the Company shall not be liable for loss occurring before noon on the date stated in the Acceptance Notices, and the liability of the Company shall immediately terminate as to subsequent acts of any Employé upon (a) the retirement of such Employé from the service of the Employer; (b) discovery by the Employer of any default hereunder by such Employé; or (c) the cancellation of this bond by the Employer or the Company as to any or all of said Employés.

This bond is executed upon the following express conditions:

1. That notice of any loss covered hereunder shall be sent by telegraph and by registered letter, both addressed to the Company, at its Home Office, Baltimore, Maryland, within ten (10) days after the discovery of such loss; that an itemized statement of such loss shall be filed with the Company by the Employer within ninety (90) days after the date of said notice of loss; and, if required by the Company, the Employer shall produce for investigation all books vouchers and evidence in the Employer's possession.

2. That the Company may at any time terminate its liability on behalf of any and every

Employé under this Bond by giving thirty (30) days' notice in writing to the Employer; and likewise the Employer may cause the termination of the Company's liability on behalf of any and every Employé by notice in writing to the Company at its Home Office in Baltimore City, specifying the date of cancellation. Upon the termination of the notice of cancellation, and provided no loss has been reported, the pro rata unearned portion of the premium shall be returned to the Employer.

3. That the Employer and the Company shall share any recovery (excluding insurance and reinsurance) made by either on account of any loss in the proportion that the amount of the loss borne by each bears to the total amount of the loss.

4. That should the Employer and the Company disagree regarding the amount of any claim made under this Bond, the amount may, at the election of the Employer or the Company be determined by arbitrators; one to be selected by the Employer, one to be selected by the Company, and a third (in the event of failure to agree upon the amount of the claim) by the two so selected; the written decision of the majority of said arbitrators shall be binding and conclusive as to the mount of such claim, and the total expense of such arbitration shall be paid by the Company.

In witness whereof, the Maryland Casualty Company has caused this Bond to be signed by its President and its Asst. Secretary, and its corporate seal to be hereunto affixed this 19th day of March, A. D. 1913.

Not valid unless countersigned by an authorized official or agent of the Company.

Robt. Ferguson, Asst. Secretary.

Countersigned at Montgomery, Alabama, this 19th day of March, A. D. 1913.

Thomas, Jackson & Wilcox, Agents.

Maryland Casualty Company, Baltimore.

Rider.

To be attached to Schedule Bond No. 34455, executed on the 19th day of March, A. D. 1913, by the Maryland Casualty Company, as surety (hereinafter called Company), in favor of the First National Bank, Montgomery, Ala. (hereinafter called Employer) on behalf of its Employés for the term continuous beginning the 10th day of April, A. D. 1913.

The Company does hereby agree that claim may be made under said bond, according to the terms and conditions thereof, for any loss or losses which the Employer may, during the period between the 10th day of January, A. D. 1907, and the 10th day of April, A. D. 1913, have sustained on account of any Employé named in the schedule attached to said Schedule Bond No. 34455, provided, however, that such Employé be also named in the schedule attached to the Bond of American Bonding Company of Baltimore, of Baltimore, Maryland, dated the 28th day of December, A. D. 1906, and covered thereby on the 10th day of April, A. D. 1913, that such loss or losses shall be covered by the terms of the bond of said American Bonding Company of Baltimore; that the Company shall not be liable under its said bond for any such loss or losses unless discovered after the expiration of the time within which claim can be made under the bond of said American Bonding

Company of Baltimore; and that the aggregate liability of the Company on account of any Employé shall in no event exceed the sum set opposite the name of such Employé in the schedule attached to said Schedule Bond No. 34455.

In testimony whereof, said Maryland Casualty Company has caused these presents to be signed by its President, attested by its Asst. Secretary, and its corporate seal to be hereto affixed, the 15th day of April, A. D. 1913.

Maryland Casualty Company.

By Jno. T. Stone, President.

Attest:

S. M. McClellan, Asst. Secretary.

Amount, $276,500.00                                    Premium, $518.41.

Fidelity Section, Bonding Department.

Maryland Casualty Company, Baltimore.

Schedule Bond No. 34455.

Schedule of Employés covered by attached Schedule Bond No. 34455 in favor of First National Bank, Montgomery, Alabama, for the year beginning April 10, 1913, and ending January 10, 1914.

| Individual. Bond No. | Name and Position. | Location. | Amount. | Premium. |
|---|---|---|---|---|
| * | * * * * | * * | * | * * |
| 7 34462. | Mark Blakely Campbell, Bookkeeper | Montgomery, Ala. | $7,500. | $14.06. |
| * | * * * * | * * | * | * * |

Amount, $276,500.00.                                    Premium, $691.25.

Fidelity Section, Bonding Department.

Maryland Casualty Company, Baltimore.

Schedule Bond No. 34455.

Schedule of Employés covered by attached Schedule Bond No. 34455 in favor of First National Bank, Montgomery, Ala., for the term beginning January 10, 1914.

| Individual Bond No. | Name and Position. | Location. | Amount. | Premium. |
|---|---|---|---|---|
| * | * * * * | * * | * | * * |
| 34462 | Mark Blakely Campbell, Bookkeeper. | Montgomery, Ala. | $7,500. | $18.75. |
| * | * * * * | * * | * | * * |

Montgomery Ala., January 10, 1914.

Received of First National Bank, Montgomery, Alabama, six hundred and ninety-one and 25/100—$691.25.

Renewal premium on Schedule Bond covering employés from January 10, 1914, to January 10, 1915. Maryland Casualty Company Bond No. 34455.

Thomas, Jackson & Wilcox, Agents.

Maryland Casualty Company.

By Geo. A. Thomas.

The action was for the recovery of the aggregate amount of $22,500 of funds of the plaintiff, which it was alleged said Campbell, while in the service of plaintiff as bookkeeper, by acts of dishonesty, appropriated to his own use. The only evidence offered in the trial was that introduced by the plaintiff. This evidence showed that, when the bond was delivered by the defendant to the plaintiff, it had the rider attached to it; that said Campbell was continuously an employé of the plaintiff

as a bookkeeper from prior to January 10, 1907, to November 14, 1914; that between the 10th day of January, 1907, and the 10th day of April, 1913, he, while in such service, dishonestly appropriated to his own use money of the plaintiff amounting to more than $7,500; that between April 10, 1913, and January 10, 1914, he so misappropriated money of the plaintiff amounting to $6,900.57; and that between January 10, 1914, and November 14, 1914, he so misappropriated money of the plaintiff amounting to $6,589.92, including in the last-mentioned sum the item of $1,200, reference to which is made in the opinion. At the conclusion of the evidence the court, at the request of the plaintiff, gave the following written charge to the jury:

If the jury believe the evidence in the case, they should find a verdict for the plaintiff, and assess its damages at the sum of $20,990.49, with interest thereon from April 20, 1915, to this date.

The sum stated in this charge is the aggregate of the several amounts last above stated. The action of the court in giving the charge just set out, and also other rulings which are referred to in the opinion, are duly presented for review.

Fred S. Ball, of Montgomery, Ala., for plaintiff in error.

Horace Stringfellow and B. P. Crum, both of Montgomery, Ala. (Steiner, Crum & Weil, of Montgomery, Ala., on the brief), for defendant in error.

Before WALKER and BATTS, Circuit Judges, and FOSTER, District Judge.

WALKER, Circuit Judge (after stating the facts as above). [1] The trial court decided that the instruments executed by the defendant made it liable to the extent of $7,500 for losses by the plaintiff caused by Campbell's misappropriations during the period between January 10, 1907, and April 10, 1913, those losses having been discovered after the expiration of the time within which claim could be made under the bond of the American Bonding Company of Baltimore, by which the fidelity of Campbell as bookkeeper had been insured; also to the extent of $7,500 more for losses similarly caused during the period beginning April 10, 1913, and ending January 10, 1914, these two dates being the ones stated in the schedule which was attached to the bond when it was delivered; and also to the extent of $7,500 for losses similarly caused during the period beginning January 10, 1914, the date of the renewal receipt and of the second schedule which was attached to the bond, and November 14, 1914, when Campbell ceased to be an employé of the plaintiff.

The fact that the bond and the rider attached to it bore different dates —the date of the former being March 19, 1913, and that of the latter being April 15, 1913—is some indication that the matter for which the rider made provision was the subject of negotiation and arrangement between the parties after the plaintiff had consented for the defendant to insure the fidelity of the former's employés and after the bond had been drawn, dated and signed, preparatory to delivery. The American Bonding Company's bond to the plaintiff, which became effective Jan-

uary 10, 1907, and renewal receipts successively attached to it, were in evidence. They show that the fidelity of Campbell as bookkeeper was insured thereby to the extent of $7,500. It is quite obvious that a purpose of the rider was to prevent the plaintiff's transfer of the fidelity insurance it carried from one insurer to another, having the effect of depriving it of protection it would have had if the change had not been made. Under the American Bonding Company's bond a claim could not be made for a loss not discovered within six months after the determination of the obligation of the bond or a renewal of it. So the rider had the effect of making the defendant liable for losses which occurred while the American Bonding Company's bond was in force, but were not discovered within six months after the transfer of the insurance to the defendant. The rider evidences the defendant's consent, given after it had signed and dated the bond, to be liable, without addition to the premium stated in the bond, for specified undiscovered losses which had been sustained before the bond and rider became effective; but it does not manifest a consent to double the amount of the liability incurred without increasing the premium charged. We think the clause of the rider which states the obligation it evidences would have meant the same thing if its language had been as follows:

"The company hereby agrees that claim may be made for any loss or losses which the employer may, during the period between the 10th day of January, 1907, and the 10th day of April, 1913, have sustained on account of any employé who is named also in the bond of American Bonding Company of Baltimore, Maryland, to the employer, dated December 28, 1906, and such loss or losses are covered by that bond on April 10, 1913, and shall be discovered after the expiration of the time within which claim can be made under the terms thereof: Provided that the aggregate liability of the company on account of any employé shall in no event exceed the sum set opposite the name of such employé in the schedule attached to said Schedule Bond No. 34455."

It is manifest that the concluding clause of that paragraph as it is found in the rider was a part of the proviso which qualified the previously expressed agreement of the defendant to be liable for losses which had occurred during a period not covered by the bond, and that it was not intended as a statement of the amount of such losses for which the defendant was to be liable. By the terms of the bond the defendant was not to be liable for any loss occurring before noon on the 10th day of April, 1913. The rider was added to make it liable for specified losses which had occurred prior to that date. The amount of liability incurred was stated in a part of the bond which the rider did not purport to affect. Instead of the rider manifesting an intention to increase that amount, we think the concluding clause of its contracting paragraph distinctly negatives the existence of such intention. The conclusion is that the expression "aggregate liability," as used in the rider, meant the liability created by the bond and the rider, taken together, and was not meant to be a statement of the amount of loss or losses insured against by the rider; the amount of insurance contracted for being a matter covered by a part of the bond which remained unmodified by the rider.

[2] The contract made by the delivery and acceptance of the policy with the rider attached stated in the body of it the date of the

commencement of the period within which the losses insured against must occur or have occurred. The policy recited that its consideration was "a premium, payable in advance, based upon an annual rate per hundred dollars of suretyship," and attached to and made a part of it was a schedule, which, so far as it is material in this case, is set out above. The language of that schedule, considered, as it must be, in connection with the body of the instrument of which it was a part, makes it plain that the fidelity of Campbell was for a period ending January 10, 1914, insured as provided in the body of the bond to the amount of $7,500, and that it was for that insurance that $14.06, the amount of the premium set opposite his name, was paid. The policy did not, either conditionally or unconditionally, entitle the insured to, nor obligate the insurer to grant, indemnity for any loss or losses occurring after January 10, 1914. The extent of the defendant's liability under its contract, which became effective on the 10th day of April, 1913, was, subject to a compliance with conditions stated, to pay specified losses, not exceeding the amounts stated, occurring during a period which ended on January 10, 1914. For subsequently occurring losses that contract made no provision whatever. Payment of previously incurred losses would be a complete satisfaction of the liability imposed upon the defendant by its original contract. That contract was what is known in the insurance business as a "term policy," under which the insurance contracted for covers only losses occurring before the expiration of the stated term. Further action of the parties, having the effect of creating a new contract, was required to make the defendant liable for any loss or losses occurring after January 10, 1914. Such further action, if taken, would not, in the absence of a stipulation to that effect, either increase or diminish the amount for which the insurer, under its original contract, had already become liable in consequence of losses incurred during the period covered by that contract, though such losses had not been discovered when a new contract was made having the effect of insuring against losses occurring in a later period. Florida Cent. & P. R. Co. v. American Surety Co., 99 Fed. 674, 41 C. C. A. 45; United States Fidelity & Guaranty Co. v. Williams, 96 Miss. 10, 49 South. 742; Commercial Bank v. American Bonding Co., 194 Mo. App. 224, 187 S. W. 99; Rosenplanter v. Provident Sav. Life Assur. Soc., 96 Fed. 721, 37 C. C. A. 566, 46 L. R. A. 473.

Rulings made in cases involving contracts which contained stipulations for renewals and such provisions as one stating that the named amount of insurance was to cover losses occurring during the continuance of the bond or any renewal thereof, or one stating that the liability of the insurer should not be cumulative, or one stating that the liability should not be for more than a stated sum, whether the loss occurred during the term of the policy or bond or a continuance thereof, or other similar provision, are not applicable to the facts of the instant case. As above indicated, the contract made by the bond with the rider attached made no provision for a renewal or extension of the liability it imposed and contained no provision similar to those just mentioned. The insurer was not acting under any obligation

imposed upon it by its original contract when, in consideration of the payment of a premium of $691.25, $18.75 of which amount was the premium for insuring the fidelity of said Campbell in the sum of $7,500, it insured the plaintiff for another term beginning January 10, 1914, as evidenced by its renewal receipt bearing that date and by a new schedule, which was attached to the original bond. The period covered by the bond before the rider was attached was three-fourths of a year. The period covered by the renewal receipt and the additional schedule was one year. The total amount of insurance was the same in both. The premium stated for the three-fourths of a year was in amount exactly three-fourths of the premium charged for insurance for the whole year. From these facts it fairly may be inferred that the charge for insurance against losses occurring after January 10, 1914, was exactly what it would have been if no contractual relation had existed between the parties prior to that date and the insurance against losses occurring after that date had been evidenced by an entirely new instrument. Nothing in the instruments evidencing the new contract indicated that the amount of insurance for which it provided was to be diminished or affected in any way as a result of the circumstance that under a previously existing contract between the parties there had been in force the same amount of insurance against similar losses occurring during a former period. The conclusion is that the effect of the bond and rider was to insure, to the extent of $7,500, Campbell's fidelity during a period ending January 10, 1914, and that the contract made by the renewal receipt and the attaching of a new schedule to the bond was one for the same, but an additional, amount of insurance against losses occurring during a period commencing January 10, 1914.

[3] It is insisted in behalf of the defendant that the court erred in ruling that an item of $1,200 was covered by the bond. On the 9th day of November, 1914, Campbell presented for deposit to the credit of his individual account as a depositor a $1,200 check drawn by him on another bank, and procured a credit on his account of the amount of that check by representing that it was good, when he knew that it was worthless. At the time this was done there were checks of Campbell on the defendant outstanding for greatly more than the amount of the credit balance shown on his account before the addition of the $1,200 item. When the $1,200 check was presented to the bank on which it was drawn, it was not paid; the amount then standing to the credit of Campbell in that bank being only $5.38. Before the defendant ascertained the worthlessness of the $1,200 check, it had paid the outstanding checks drawn by Campbell, amounting to $1,117. It is not open to question that the defendant's payment of such outstanding checks, under the circumstances stated, resulted in loss to it caused by the fraud or dishonesty of Campbell. The bond insures against losses "sustained by reason of any act or acts of fraud, dishonesty, forgery, embezzlement, wrongful abstraction, or willful misapplication on the part of any employé (while in any position in the service of the employer and committed directly or through connivance with others) named in the schedule hereto attached." Nothing in the terms of the contract con-

fines the losses insured against to such as resulted from acts of fraud, dishonesty, etc., committed by the employé while in the performance of service for which he was employed. The bond was drawn by the defendant, and its language is to be construed most strongly against it. The language used is broad enough to cover a loss due to the fraud or dishonesty of a named employé, though his misconduct was in a dealing between him and the employer not connected with the rendition of the service for which he was employed. But the amount of the loss due to the transaction in question was $1,081.25, not $1,200, as there was a balance of $35.75 standing to Campbell's credit when the $1,200 check was deposited.

[4] It is contended that the plaintiff was deprived of the right to recover for the losses alleged by its failure to comply with the requirement as to filing an itemized statement contained in the condition stated in the bond:

"That notice of any loss covered hereunder shall be sent by telegraph and by registered letter, both addressed to the company at its home office, Baltimore, Maryland, within ten days after the discovery of such loss; that an itemized statement of such loss shall be filed with the company by the employer within ninety days after the date of said notice of loss; and, if required by the company, the employer shall produce for investigation all books, vouchers and evidence in the employer's possession."

The bond insured against losses "of money, securities or other personal property." The quoted provision requiring an itemized statement contemplates an enumeration of the things claimed to have been lost. Where money is the only thing claimed to have been lost, it is not to be supposed that it was contemplated that the insured would be required to describe the money lost, or to state exactly when or how the act or acts of fraud, dishonesty, forgery, embezzlement, wrongful abstraction or willful misapplication on the part of the employé were committed. Within the time prescribed the plaintiff furnished to the defendant a detailed account of the loss resulting from the above-mentioned $1,200 check transaction, and also a statement showing the total amount of money claimed to have been lost in consequence of Campbell's fraud and dishonesty, and setting out the exact amount claimed to have been lost during each year covered by the contract sued on. The language of a provision requiring a statement by the insured to the insurer of the loss or losses claimed to have been sustained would have to be very explicit to warrant a conclusion that such requirement is not complied with, unless the statement discloses more than is necessary to be alleged and proved in a suit on the contract to recover for losses claimed to have been sustained, or in a prosecution of the employé for the criminal offense which his alleged misconduct involved. The evidence showed that the books kept by the plaintiff and remaining in its possession enabled it to ascertain the amount of such losses, and indicated that its inability to ascertain and state how the losses, other than that resulting from Campbell getting credit for the amount of the $1,200 check, were brought about, was due to Campbell's successful concealment of his defalcations and of the method of their accomplishment. During the entire period covered by the contracts sued on Campbell acted in the capacity of individual bookkeeper. He was in charge of books

showing the accounts of depositors with the plaintiff bank. These accounts were kept in loose-leaf ledgers. Leaves showing a number of such accounts were missing when the plaintiff's books were examined after the discovery of Campbell's defalcation. There was evidence to prove that shortly before that discovery Campbell at night took from the bank's storage room a large mass of papers. It was to be inferred that the papers so taken included those showing false entries the making and concealment of which enabled him to defraud his employer. The provision in the quoted stipulation that, "if required by the company, the employer shall produce for investigation all books, vouchers, and evidence in the employer's possession," evidences the absence of an intention to require the insured to state anything which, due to no fault of his, it is impossible for him to ascertain. The conclusion is that the evidence adduced sufficiently showed that, within the time prescribed, the plaintiff furnished such itemized statement of the loss claimed to have been sustained as was called for by the contract.

The court erred in ruling that the rider had the effect of adding $7,500 to the amount of loss caused by Campbell which was insured against, and in including in the amount for which a verdict was directed the sum of $1,200, instead of $1,081.25, as the loss occasioned by the above-mentioned $1,200 item. The result was that the principal amount awarded by the verdict and judgment was $7,013.32 more than the evidence warranted.

Because of the errors mentioned, the judgment is reversed, with direction that a new trial be granted unless the defendant in error shall, within 30 days after the filing in the District Court of the mandate of this court, enter a remittitur of $7,013.32 of the principal amount for which the judgment was rendered.

FOSTER, District Judge, concurs in the reversal of the judgment, but is of opinion that the instruments sued on did not make the plaintiff in error liable for more than $7,500.