## HARTFORD ACCIDENT & INDEMNITY CO. v. WEIL BROS.
### No. 5679.

Circuit Court of Appeals, Fifth Circuit.

May 28, 1930.

Marion Rushton and Ray Rushton, both of Montgomery, Ala., and Wm. M. Hall, of Memphis, Tenn. (Rushton, Crenshaw & Rushton, of Montgomery, Ala., on the brief), for appellant.

Lee H. Weil and Richard T. Rives, both of Montgomery, Ala. (Weil, Stakely & Cater, and Hill, Hill, Whiting, Thomas & Rives, all of Montgomery, Ala., on the brief), for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge.

Appellees brought suit to recover on two indemnity bonds issued to them by appellant. The complaint contained three counts. At the close of the evidence the third count was abandoned. By agreement the first count was withdrawn from the jury and was submitted to the judge for decision on the law and the facts. Appellants requested a directed verdict on the second count which was refused. The jury returned a verdict on the second count in the sum of $53,798.16, and the court found for appellees on the first count in the sum of $18,229.66. Judgment in the sum of $72,027.82 was entered. Error is assigned to the refusal to direct a verdict on the second count and to the action of the court in entering judgment on the first count.

There was evidence tending to show the following state of facts; the parties will be referred to as they appeared in the District Court:

Defendant issued an indemnity bond to plaintiffs dated August 5, 1925, which guaranteed them against pecuniary loss of money

or other personal property sustained through fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction, or willful misapplication, committed directly or in connivance with others by any of the employees named upon an attached schedule, in any position, anywhere, during the period commencing with the respective dates and in the amounts set opposite the names of the employees in said schedule. This bond is referred to as the first bond. What is called the second bond was issued with its effective date August 15, 1927, and was substituted for the first bond. By it defendant agreed to indemnify plaintiffs for any and all direct losses of money or other personal property to an amount not exceeding $300,000, sustained through larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, willful misapplication, or other fraudulent or dishonest acts, committed by any one or more of the employees, acting directly or in collusion with others. This was a blanket bond covering all employees of plaintiffs without naming them. The first bond provided a limitation of fifteen months after termination of the suretyship for making claims for losses covered by it. The second bond, by a rider, provided for payment of losses accruing under the first bond but not discovered until after the period of limitation. There is nothing in the second bond that could be construed as terminating liability which had accrued under the first bond by the substitution of the second bond or limiting the recovery under the second bond to the amounts shown on the schedule of the first bond as to each employee.

Plaintiffs were engaged in the cotton business with offices in Montgomery, Ala., Memphis, Tenn., various other cities in the South, and New York City. In August, 1926, plaintiffs employed Benjamin G. West as manager of their branch office in Memphis, and thereafter that office was conducted under the style of Weil Bros. & West. However, West was an employee receiving 25 per cent. of the net profits as his compensation and was not a partner. His name was added to the schedule of the first bond for the amount of $50,000. He was a man of good reputation and experienced in the cotton business and at the time of his employment was president and manager of the Arkansas-Memphis Cotton Company, engaged in the same business as plaintiff. He immediately began to liquidate the affairs of the Arkansas-Memphis Company, but shortly after his employment he was replaced by another liquidator and thereafter had no control over the liquidation of its affairs. The Arkansas-Memphis Company had been doing a future hedge business with Weil Bros.' New York office and had a line of credit of about $5,000. At the time it went into liquidation their account showed a debit of $2,600 and there were also open six future contracts, which showed a profit of over $900. The debit was subsequently liquidated. West falsely informed the new liquidator, and other parties in interest, of the Arkansas-Memphis Company that these open contracts had been closed out. Had he not done so there were sufficient free assets to have paid any loss then accruing. He also concealed from Weil Bros. that he was no longer the liquidator of the Arkansas-Memphis Company and represented to them that he had on hand several hundred bales of cotton, amply sufficient to take care of any loss that might accrue from the liquidation of the six open contracts. He continued to keep these contracts open, swapping them from time to time from one month to another; the last transaction of that kind being had on July 22, 1927. Thereafter, on September 27, 1927, under instructions from West, the account was closed. The net result was a loss of $17,409.-48. This transaction forms the basis of the first count which was submitted to the court for decision.

On December 20, 1926, West, acting within the apparent scope of his authority, sold in the name of plaintiffs to Cooper & Brush 1,000 bales of low grade spot cotton of a type designated as B M J O at 8½ cents per pound. He concealed this transaction from plaintiffs and made false statements regarding it to other employees when facts indicating its existence were discovered. He made a delivery of 100 bales on the contract but told other employees of plaintiffs it was an open order. In the latter part of December, 1927, plaintiffs accidentally discovered the existence of this sale. They were obligated to and did deliver the remaining 900 bales of cotton, although the market had advanced to about 18½ cents, and suffered a loss of $51,377.70. This forms the basis of the second count.

There is no dispute as to the amount of actual loss suffered by plaintiffs and no question as to the acts of concealment committed by West. All that was left for the jury and the court to determine was whether West intended to carry the transactions

above set out for his own benefit, and if so, whether his conduct amounted to fraud and dishonesty covered by the terms of the bonds. From the evidence in the record the conclusion is inescapable that the conduct of West was both fraudulent and dishonest and that he intended to carry the transactions for his own benefit. It was the duty of West to advise his employers truthfully as to both transactions. But for his confidential position it would have been impossible to have perpetrated the frauds. The bonds covered any loss caused by the fraud or dishonesty of West. It is immaterial what means he used or that the transactions were between himself and his employers. Maryland Casualty Co. v. First Nat. Bank (C. C. A.) 246 F. 892.

It is contended by defendants that as West was not in any position in Weil Bros.' New York office, losses in that office resulting from his fraudulent acts were not within the indemnity. This contention is without merit. The New York office was simply a branch of plaintiffs' business facilitating the fraudulent transaction of West, and there could be no doubt that a loss occasioned through that office was as much a loss accruing to plaintiffs as if it had occurred in the Memphis office.

It appears that plaintiffs had brought suit against the Arkansas-Memphis Company. It is contended that this amounted to a confirmation of West's acts as its representative and plaintiffs could not sue both the principal and the surety. This contention is untenable. The bonds were contracts of absolute guaranty and plaintiffs' right of action is not controlled or defeated by the assertion of a claim against another person. 12 R. C. L. p. 1089.

It is also contended that as to both transactions the loss accrued during the life of the first bond and in any event the recovery should be limited to $50,000, the amount insured under the schedule of employees. There is no doubt the loss on the Arkansas-Memphis Company transaction accrued under the first bond. That was a future contract and losses were payable from time to time as the market fluctuated, regardless of the ultimate result. But as to the Cooper and Brush transaction the situation is different. That was a spot sale and the loss was not actually suffered until delivery was made. Plaintiffs were entitled to recover on both bonds.

Other assignments of error run to the overruling of demurrers to the complaint and to admission of certain testimony. They are entirely without merit.

The record presents no reversible error.

Affirmed.