DURHAM PEPSI-COLA BOTTLING COMPANY v. MARYLAND CASUALTY COMPANY AND COMMERCIAL CASUALTY INSURANCE COMPANY.

(Filed 19 December, 1947.)

1. **Indemnity §§ 2b, 2c—Evidence held sufficient for jury in action on policy indemnifying insured against theft or embezzlement by employees.**

   The policy in suit provided indemnity for loss resulting from the larceny, theft or wrongful abstraction on the part of any employee of insured, acting directly or in collusion with others, with specific provision that the inability of insured to designate a specific employee or employees causing the loss should not prevent recovery. The evidence tended to show that the last employee to leave for the night placed money in the safe and locked it with a combination lock so that the safe could be opened without force only by a person knowing the combination, and then checked all the doors and windows and ascertained they were locked, and that during

the night it was discovered that the door of the safe was open and the cash and checks taken, and a window of the building open. Investigation disclosed that no force was used in opening the safe and there were no indications that any of the doors or windows of the building had been forced. There was evidence tending to exculpate all persons other than employees who knew or had known the combination to the safe. *Held:* The evidence is sufficient to be submitted to the jury on the issue of insurer's liability. Insurer's contention that the evidence tends only to show a burglarious entry is untenable and the fact that the wrongful abstraction was made after working hours and that no particular employee could be fixed with wrongdoing, is immaterial.

**2. Indemnity § 2d—**

Insured is not entitled to recover the face amount of checks abstracted from his safe in the absence of evidence that insured took reasonable action to avoid loss thereon but nevertheless suffered loss in the amount claimed.  ·

**3. Appeal and Error § 50—**

Where appellee suggests it is willing to waive recovery of the particular  · element of damages upon which error was committed in the instructions, the cause will be remanded in order that the recovery be modified by such waiver, or, in the absence of waiver, for a new trial on the issue of damages.

APPEAL by defendant Maryland Casualty Company from *Parker, J.,* at March Civil Term, 1947, of DURHAM.

The plaintiff company operated a bottling plant in the suburbs of Raleigh. On the evening or night of 16 April, 1943, it suffered a loss of $2,472.74 in money and checks, abstracted, it is alleged, from the safe in its building "through larceny, theft, embezzlement, misappropriation, abstraction, burglary, or other fraudulent or dishonest act or acts committed by some employee of the plaintiff."

The plaintiff held two policies of insurance—one in each of the defendant companies—and sued the defendants thereupon to recover indemnity for the loss.

On the trial it appeared that the policy of the Commercial Casualty Insurance Company covered only a loss by abstraction from the safe accomplished by actual force, and holding there was no evidence of force in the sense necessary to recovery, the trial Judge let the Commercial Casualty Insurance Company out of the case on its demurrer to the evidence, by judgment of nonsuit.

Pertinent provisions of the Maryland Casualty Company policy are as follows:

"Maryland Casualty Company, Baltimore, Maryland, (hereinafter called Underwriter), in consideration of an annual premium, hereby agrees to indemnify Durham Pepsi-Cola Bottling Company

of Durham, N. C. (hereinafter called Insured) against any loss of money or other property, real or personal (including that part of any inventory shortage which the Insured shall conclusively prove has been caused by the dishonesty of any .Employee or Employees) belonging to the Insured, or in which the Insured has a pecuniary interest, or for which the Insured is legally liable, or held by the Insured in any capacity whether the Insured is legally liable therefor or not, which the Insured shall sustain, the amount of indemnity on each of such Employees being Twenty-five Hundred Dollars ($2500.00) through larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, willful misapplication, or other fraudulent or dishonest act or acts committed by any one or more of the Employees as defined in Paragraph 2, acting directly or in collusion with others, during the term of this bond as defined in Paragraph 1, and while this bond is in force as to the Employee or Employees causing such loss, and discovered and reported as provided in paragraph 4."

"That in case a loss is alleged to have been caused by the fraud or dishonesty of one or more of the Employees, and the Insured shall be unable to designate the specific Employee or Employees causing such loss, the Insured shall nevertheless have the benefit of this bond, provided that the evidence submitted reasonably establishes that the loss was in fact due to the fraud or dishonesty of one or more of the said Employees, and provided further that the aggregate liability of the Underwriter for any such loss shall not exceed the amount of indemnity carried hereunder on any one of said Employees, to wit, the amount stated in the first paragraph of this bond."

The policy defines "Employee" or "Employees" covered by the policy to mean and include "one or more of the natural persons (except directors of the Insured) who are in the regular service of the Insured in the ordinary course of the Insured's business and who are compensated by salary, wages or commissions and whom the Insured has the right to direct in the performance of service."

Omitting admissions in the answer of Maryland Casualty Company covering more formal undisputed matters, and coming to the evidence bearing on the controverted phases of the case, this may be summarized as follows:

The plaintiff's evidence tended to show that on the evening of 16 April, 1943, the several salesmen and collectors employed by the plaintiff came in, bringing with them cash collected, and some checks, which were deposited in the company's office safe, in its building above mentioned, as was customary. Evidence tended to show that the money and checks

so deposited, together with the deposits of 14 April, and 15 April, amounted to a total of $2,472.74.

Beverly Bullock testified that he put the last bag of money in the safe, closed the safe door, turned the dial, and locked it; then jerked the door to see if it was locked. This was near seven o'clock p.m. He then checked all the windows in the office and warehouse, and the front and back doors, which were closed and locked. He then went out of the door and locked it, leaving no one in the building. All windows and doors were closed and locked.

The safe had an outer door operated by a time lock, but this door was not in use. The combination dial lock referred to was on the inner door, and this door was kept locked at all times. All the employees of the Raleigh plant had keys to the building and knew the safe combination.

Those knowing the combination were listed as follows: Seven salesmen and two warehouse supervisors in the employment of the plaintiff, three former employees, and M. B. Burnette, Milton Airheart and S. T. Gaddy.

Doors were equipped with Corbin and Yale locks and windows were so constructed that when they were closed they automatically locked. There was no mechanism outside the windows by which they could be opened, it would be necessary to break a glass to enter. The doors could not be opened from the outside without a key.

A policeman of the City of Raleigh, on his regular patrol, discovered that one of the windows of the office was open 12 or 15 inches and using his flashlight through this aperture, discerned that the door of the office safe was open. He then called some of the employees, and the ensuing investigation disclosed the following conditions:

The safe was open and empty of money and checks. There were no marks on the safe indicating that actual force had been applied in opening it. There were no indications that either the doors or windows had been forced in making an entrance.

Of the persons other than employees who now knew or had previously known the combination to the safe, all were examined and the evidence tended to show that they were not in Raleigh at the time, did not participate in the affair, and knew nothing of it.

The plaintiff introduced expert evidence tending to show that the safe was of such construction and the combination of such character that it could have been opened only by one knowing and operating the combination or by the use of external force, as by "blowing" or "burning" into it; that the chance of opening by working the combination was negligible for anyone who did not know it.

At the conclusion of the plaintiff's evidence and at the conclusion of all the evidence the defendant moved for judgment as of nonsuit, which was declined, and defendant excepted.

Defendant requested the following special instruction:

"That should you find from the greater weight of the evidence, the burden being on the plaintiff to so satisfy you, that the plaintiff is entitled to recover on the bonds executed by the defendants in favor of plaintiff, you could not answer the issue as to the amount that plaintiff should recover of defendants in an amount greater than $2,042.83, $341.29 sought to be recovered by plaintiff was according to the testimony represented by checks which checks the plaintiff has failed to show were of value and collectible."

The court stated the contention of the defendant on this point, but gave no part of the special instruction asked; but with respect thereto charged: "The Court instructs you that a worthless check is not property of value but a good and collectible check is." This is covered by defendant's exception.

The following issues were submitted to the jury:

1. Is the defendant Maryland Casualty Company indebted to the plaintiff, Durham Pepsi-Cola Bottling Company, under the terms of its Blanket Position Bond #4633?

2. If so, in what amount?

The jury answered the first issue "yes," and the second issue "$2,834.12, with interest from the first day of this term until paid."

Defendant moved to set aside the verdict. Motion was overruled and defendant excepted.

To the ensuing judgment on the verdict the defendant objected, and excepted; and appealed.

*Victor S. Bryant and Robert I. Lipton for plaintiff, appellee.*
*R. M. Gantt for defendant, appellant.*

SEAWELL, J. Under the exceptions noted, the defendant arrays the following objections to the trial:

First, that the defendant's contract of insurance does not cover the kind and character of loss shown by plaintiff, since the evidence shows a burglarious entry and abstraction from the safe while employees were not on duty; second, that there is a complete failure of proof since no evidence has been directed to any particular employee covered by the policy; and not necessarily to any employee at all; and third, that the trial judge failed to give defendant's special instruction relating to non-recoverability for the lost checks under plaintiff's evidence, which, it is contended, fails to show an actual money or property loss by their taking.

Turning to the first two objections, which may be considered together, we are of the opinion and so hold that the felonious taking of the money and things of value from the safe, as described in the evidence, would be a loss within the meaning of the terms employed in the policy providing indemnity for loss "through larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, willful misappropriation, or other wrongful, fraudulent or dishonest act or acts," and if attributable to an employee acting directly or in collusion with others during the life of the policy, would render the defendant liable for the loss. The fact that the wrongful abstraction may have been made by an employee or employees in other than working hours does not destroy the relation between employer and employee, the nature of the trust, nor, as exemplified in this case, does it necessarily affect the superior facilities for theft, larceny, or fraudulent acts of dishonest but trusted employees against which it was intended to insure. The inability to fix the crime on any particular employee is not fatal to recovery.

The difficulty of proof where several employees are in a position of common trust is sufficiently obvious as to have become a matter of treaty between the insurer and the insured. See pertinent provisions above quoted. The evidence is sufficient to reasonably establish that the loss was due to the dishonest act of one or more of the employees, and satisfies the conditions of liability.

However, we are not sure that plaintiff is entitled to recover, as for a money loss, the face value of the lost checks, or indeed, on the present showing, anything for their loss. While the special instruction requested by defendant is, perhaps, not as ample as might have been demanded, we are inclined to the opinion that the question is raised here regarding the validity of that much of the recovery. No doubt the names of many customers who paid in checks are known and in many instances payment of the lost checks may be stopped and collection made. As between the insurer and the insured it seems that some effort of that sort might have been a duty.

On the oral argument the plaintiff's counsel expressed a willingness to abate the judgment by the amount represented by the checks.

This cause is remanded to the Superior Court of Durham County, where the plaintiff will be permitted to file waiver as to the amount of recovery representing lost checks, as appears from the record; whereupon judgment will be entered for the balance recovered as determined upon the issues; otherwise, for error in the respect mentioned judgment will be there entered directing a new trial upon the second issue.

Error and remanded.