EMPLOYERS' LIABILITY ASSURANCE CORPO-RATION, LTD. *v.* REED'S REFRIGERATION SERVICE, INC.

[No. 157, September Term, 1959.]

*Decided March 16, 1960.*

The cause was argued before Brune, C. J., and Henderson, Hammond, Prescott and Horney, JJ.

*Thomas G. Andrew,* with whom were *Rollins, Smalkin, Weston & Andrew,* on the brief, for appellant.

*Preston A. Pairo,* with whom was *Preston A. Pairo, Jr.,* on the brief, for appellee.

Brune, C. J., delivered the opinion of the Court.

This is an appeal from a summary judgment for the plaintiff (Reed) against the defendant (the Insurance Company) in a suit under a "Comprehensive Dishonesty, Disappearance and Destruction Policy" issued by the Insurance Company to Reed, for which the premium was duly paid. The issue is whether the plaintiff's loss through cashing a bad check for a dishonest employee was covered by the policy. The employee was prosecuted and sentenced on this and two other bad check charges.

The relevant provisions of the policy are contained in an insuring agreement and in the definitions. Under the former the insurer agreed to indemnify the insured for all loss sustained "[t]hrough any fraudulent or dishonest act or acts, committed anywhere by any of the Employees acting alone or in collusion with others, including loss of money and securities and other property through any such act or acts of

any of the Employees, and including that part of any inventory shortage which the assured shall conclusively prove to have been caused by the fraud or dishonesty of any of the Employees," subject to a stated limit of liability as to each (not here exceeded). Under "Definitions," the policy provided: "The following terms, as used in this Policy, shall have the respective meanings stated in this Section: 'Employee' or 'Employees' means, respectively, one or more of the natural persons (except directors or trustees of the Assured, if a corporation, who are not also officers or employees thereof in some other capacity) while in the regular service of the Assured in the ordinary course of the Assured's business during the Policy Period and whom the Assured compensates by salary, wages and/or commissions and has the right to govern and direct in the performance of such service, and who are engaged in such service within any of the States of the United States * * *, or elsewhere for a limited period, but does not mean brokers, factors, commission merchants, consignees, contractors or other agents or representatives of the same general character."

There is no question as to the facts that the dishonest employee was in the employ of Reed when she cashed the bad check for $600 here involved and that she cashed it through her employer's cashier. The defense is that when she did so, she was not *acting* in the service of the employer. The Insurance Company contends that this defense raised an issue of fact and thus barred the entry of a summary judgment and that the policy did not cover a loss incurred when she was not acting in the employer's business and so did not cover a loss due to an accommodation extended to an employee outside that field. We think that the case turns on the construction of the policy and that the determination of the second question is decisive.

The policy, reduced to its simplest terms as applied to the facts of this case, means, we think, that the Insurance Company agrees to indemnify the assured against loss due to the dishonest act of a person who is an employee, as that term is defined in the policy. The contention of the appellant would read the word "acting" into that statement so that the policy

would cover a loss due to the dishonesty of an employee only while acting as such. The fatal difficulty with that construction is that it is not what the policy says. We need not stop to consider whether, if the policy did say it, the policy might then be worthless to the insured for the reason that an employee, while engaged, say, in stealing from his employer, would not be acting in the employer's business. Quite apart from that argument, the policy does not use the word "acting" either in the insuring clause or in the definition clause. The latter clause draws a distinction between persons in the regular employ of the insured subject to its full control and direction, on the one hand, and agents such as brokers, factors, consignees, contractors, etc., not subject to such control, on the other.

We find no room for doubt or dispute that the employee here involved fitted the policy definition of "Employee." There is no question that her act was dishonest or that the insured suffered loss thereby. The Insurance Company's contention that its risk should be measured by and limited to risks incident to the conduct of the business and should not be extended to cover risks due to accommodations to employees may have much economic merit, but the time to carry this economic theory into effect was when it was drawing the policy.

The appellant cites *Picanardi v. Emerson Hotel Co.*, 135 Md. 92, 108 A. 483, in support of the contention that losses and premiums cannot be measured by different standards. That case, however, is very different from this. There benefits under the Workmen's Compensation Act and premiums on policies to provide such benefits were both based upon payrolls. The claimant sought to increase his benefits by including in his compensation the value of board which the hotel furnished him, but which was not of any agreed value and was not included in the payroll in calculating premiums. The then applicable statute provided for including as part of the payroll not only wages, salary, overtime pay, etc., but also compensation payable in board, subject to the proviso that the money value of board and similar advantages should have been fixed by the parties. Since that had not been done in

the *Picanardi* case, its value was held properly excluded in computing the employee's average weekly wage and benefits based thereon.

There is no comparable computation or restriction here. There is not even a schedule of amounts of coverage on different employees. The insurer wrote a comprehensive policy —so designated—and used terms of ordinary meaning to define the risks which it assumed. In 5 Couch, *Insurance,* § 1199 k it is stated that "a fidelity indemnity bond insuring against losses from acts of fraud, dishonesty, forgery * * * [etc.] not limited to acts committed by employees while acting as such, covers losses from acts outside the scope of employment * * *." *Maryland Casualty Co. v. First National Bank,* 246 F. 892 (C. C. A. 5), *cert. den.* 246 U. S. 670, cited in support of the text, fully supports it. In that case the surety was held liable to the bank for losses incurred by the bank through honoring checks drawn by an employee of the bank on his account, where the bank did so in reliance on the employee's representation that a check deposited by him, drawn on another bank, was good, when in fact it was not. In that case the court said (at pp. 900-901): "Nothing in the terms of the contract confines the losses insured against to such as resulted from acts of fraud, dishonesty, etc., committed by the employé while in the performance of service for which he was employed. The bond was drawn by the defendant, and its language is to be construed most strongly against it. The language used is broad enough to cover a loss due to the fraud or dishonesty of a named employé, though his misconduct was in a dealing between him and the employer not connected with the rendition of the service for which he was employed."

The above case was cited in *Hartford Accident & Indemnity Co. v. Weil Bros.,* 41 F. 2d 171, at 173, in support of the proposition that it made no difference what means a fraudulent employee used "or that the transactions were between himself and his employers." See also *Durham Pepsi-Cola Bottling Co. v. Maryland Casualty Co.,* 228 N. C. 411, 45 S. E. 2d 375, where the surety was held liable for the theft

of money from the insured's safe committed after business hours by employees of the insured.

We think that here, as in *Maryland Casualty Co. v. First National Bank, supra,* the language of the policy (there of a bond) is broad enough to cover loss due to a fraud in a transaction between the employee and the insured not connected with the rendition of the service for which she was employed. The language being clear, there is no room for construction and it is to be applied in its ordinary meaning; and even if there were doubt, since the policy was drawn by the appellant, any ambiguity would be resolved against it. *Ebert v. Millers Mutual Fire Ins. Co.,* 220 Md. 602, 155 A. 2d 484, and cases therein cited.

Since it makes no difference whether the cashing of the check was or was not done while the dishonest employee was acting as an employee of the insured, the alleged fact that she was not, is immaterial. Therefore, it cannot present a dispute as to a material fact and so bar the entry of a summary judgment.

We think that the trial court correctly held that the policy covered the loss and that it properly entered a summary judgment for the insured.

*Judgment affirmed, with costs.*