STATE OF MISSOURI at the relation of MARYLAND CASUALTY COMPANY, Relator, v. WILLIAM C. HUGHES, EDWARD J. McCULLEN and LYON ANDERSON, Judges of the St. Louis Court of Appeals.—164 S. W. (2d) 274.

Division Two, September 8, 1942.

*Moser, Marsalek & Dearing* for relator.

*Burnett, Stern & Liberman* and *Edwin Grossman* for respondents.

**1144**

LEEDY, J.—Certiorari to quash the record and opinion of the St. Louis Court of Appeals in Daub et al. v. Maryland Casualty Co., 148 S. W. (2d) 58. That action was based on a public liability policy issued by Maryland Casualty Co., to plaintiffs therein, A. F. Daub and Anna Daub, his wife. Said policy insured the Daubs against liability imposed by law upon them for damages on account of bodily injuries, including death resulting therefrom, "accidentally suffered or alleged to have been suffered by any person or persons *not employed by* the Assured, while within or upon" certain described premises occupied by the Daubs as their residence. A judgment was obtained against the Daubs by one Winton Meyer, a minor, on account of personal injuries sustained by him while on said premises, and under circumstances presently to be noticed. A suit by Anna Meyer, Win-

ton's mother, for loss of services was compromised and settled. Relator denied liability under said policy, and the Daubs sued and recovered judgment against the relator for $2,544.50, being the amount of said judgment, the sum paid in settlement of the mother's claim, and attorneys' fees, which judgment was affirmed by the Court of Appeals.

The Court of Appeals overruled relator's assignment of error based on the refusal of the trial court to direct a verdict for it. It was contended that the evidence showed that Winton Meyer, at the time of his injury was employed by the Daubs within the meaning of the policy, and was thus excluded from the coverage' thereof. The facts in connection with this point are stated in the opinion of the Court of Appeals, as follows: "The evidence shows that Anna Meyer worked for plaintiffs at their home during the year 1936, commencing work in the spring of that year. She did general housework. She did not work all the time, but worked only on Saturdays. She usually came to the home between eight and nine o'clock in the morning and worked until noon or one o'clock. Plaintiffs gave her $1.40, $1.50, or $1.60, and her lunch, each day she work. On one occasion Mrs. Meyer asked Mrs. Daub if she did not have some work for Winton to do to keep him out of mischief, saying that she did not have to pay him anything. Mrs. Daub replied that maybe he could rake some leaves. Thereafter, on one Saturday morning Mrs. Meyer brought Winton along with her and he raked some leaves that morning. He worked at raking the leaves until about eleven o'clock. Mrs. Daub gave him a quarter and his lunch. On a Saturday a few weeks afterwards Winton grubbed out a stump in the back yard. It took him until lunch time to get the stump out. Mrs. Daub gave him $1.50 and his lunch. Later, on Thursday, November 19, 1936, Mr. Daub drove to the Meyer home to get Winton to rake leaves. He found Winton out in the yard and asked him if he wanted to rake some leaves. Winton went in the house and reported to his mother and came out with his rake and got in the car. That was about 9:30 or 10 o'clock in the morning. When they arrived at the Daub home Winton commenced raking the leaves in the front yard. While he was raking the leaves, Mr. Daub was assembling ladders on the porch in order to take leaves out of the gutters and put strainers in the downspouts to prevent the leaves from going through. When he had the ladders up, he asked Winton to stand on the bottom ladder to steady it and hold it in place. Winton got on the ladder and while standing there Mr. Daub threw some leaves out of a gutter in such a way that they struck Winton in the face and at the same time did something that shook the ladder and caused Winton to lose his balance so that he fell from the ladder to the concrete walk, whereby he was seriously injured. It is the injury thus sustained for which Winton and Mrs.

Meyer made claims for damages against the plaintiffs and which were settled and paid as before stated.''

Upon the foregoing facts, respondents held that Winton Meyer, at the time of his injury was not regularly employed by, nor a regular employee of the Daubs, and he was, therefore, not excluded from the coverage of the policy. In reaching that conclusion, the opinion states: ''The word 'employed' is capable of a great variety of interpretations, and is therefore subject to restrictions and limitations arising from its use in connection with other words, or from the context of the contract or statement in which it appears. The word as used in the policy in suit here obviously imports the relation of master and servant or employer and employee, but it does not necessarily import every sort of such relation. That the relation in its broad sense existed when Winton was raking leaves or standing on the ladder there could hardly be a question. And this is so whether his services were gratuitous or to be paid for. But does this mean that he was employed within the meaning of the policy? The insuring clause of the policy grants insurance against liability for injuries suffered by 'any person or persons not employed by insureds.' The words 'any person or persons' are most comprehensive and unambiguous. The restrictive words 'not employed' are susceptible of many meanings, and therefore necessarily introduce ambiguity and leave the clause open to construction. And that construction most favorable to the insured must be adopted.

''The word 'employee,' which is the correlative of employer, is commonly used as signifying continuous service, or as designating a person who gives his whole time and services to another for a financial consideration, or as designating a person who performs services for another for a financial consideration, exclusive of casual employment, or a person in constant and continuous service, or a person having some permanent employment or position, or a person who renders regular and continued services, not limited to a particular transaction, or a person having a fixed tenure or position. The words, employed and employee, as used in insurance policies, generally denote regular employment, as distinguished from occasional, incidental, or casual employment. It is in this sense, we think, that the word employed is used in the policy with which we are here concerned. The obvious purpose of the restrictive words 'not employed' is to exclude from coverage any person regularly employed, or, in other words, any regular employee, not a mere occasional, incidental, or casual employee.''

 Relator cites no case or cases of this court construing the words ''any person or persons not employed by'' as found in the policy in question. It contends such language is so plain and unambiguous that there is no room for construction, and that being common words, they must be given their natural meaning, and the

policy enforced as written, thus bringing the case within the rule of the following Supreme Court decisions which respondents were bound to follow: Turner v. Fidelity & Casualty Co., 274 Mo. 260, 202 S. W. 1078; State ex rel. Nat'l. Life Ins. Co. v. Allen, 301 Mo. 631, 256 S. W. 737; Wendorff v. Mo. State Life Ins. Co., 318 Mo. 363, 1 S. W. (2d) 99; State ex rel. Mutual Life Ins. Co. v. Shain, 344 Mo. 276, 126 S. W. (2d) 181; State ex rel. Mutual Benefit Assn. v. Shain, 334 Mo. 920, 68 S. W. (2d) 685.

■ Accordingly, we are not concerned with whether the construction placed upon said language is that which this court would have given, or whether we deem it a reasonable or proper construction. The single and determinative inquiry is whether, under the rule invoked by relator, said language is subject to construction at all; and this question, we think, must be answered in the affirmative. The view that the words "not employed" do introduce ambiguity, and therefore leave the clause open to construction, as ruled by the Court of Appeals, is fortified upon a consideration of a further provision of the liability clause providing coverage "while within or upon the premises . . ., (and elsewhere, if caused in the course of their *employment by employees* of the assured *engaged as such* at said premises, but who are required in the discharge of their duties to be from time to time at other places,)." That the word "employee" "may have different meanings in different connections admits of no doubt." [30 C. J. S., p. 226.] "The relationship of employer and employee is the same as that of master and servant." [35 Am. Jur., Master and Servant, Sec. 2, p. 445.] And so it is hardly to be doubted that a person might be "employed by the Assured" and still be within the coverage of said policy. This is true because one may be "employed" without being a servant, as, for example, an independent contractor.[1] Likewise an attorney is said to be "employed" by his client, but no one would contend that the relationship created thereby is that of master and servant. Examples could be multiplied to show that the words "not employed by" are not so plain and unambiguous as to leave no room for construction. From what has been said it follows that respondents' opinion may not be quashed for the reason assigned.

■ The other point is that notwithstanding the finding of the Court of Appeals that in the prior suit (between Winton Meyer and the Daubs) "the court in arriving at its judgment necessarily found that the relation of master and servant or employer and employee

---

[1]Defined as "one who, exercising an independent *employment*, contracts to do work according to his own methods without being subject to control of his *employer*, except as to the result of his work." (Italics ours.) (Flori v. Dolph (Mo.), 192 S. W. 949; Coul v. Geo. B. Peck D. G. Co. (Banc), 326 Mo. 870, 32 S. W. (2d) 758; Stein v. Battenfield Oil & Grease Co., 327 Mo. 804, 39 S. W. (2d) 345.)

existed between insureds and Winton Meyer," respondents failed to give effect to that fact in determining the issues in this suit. For this reason it is asserted respondents brought their opinion in conflict with controlling decisions of this court to the effect that a fact put in issue and directly determined by a court of competent jurisdiction cannot be disputed in a subsequent suit between the parties, and that in a subsequent suit by a policyholder against his insurer the judgment rendered in a prior suit by the injured party against the policyholder is conclusive as to every fact necessarily involved and litigated therein. The cases relied on are: Dolph v. Maryland Casualty Co., 303 Mo. 534, 261 S. W. 330; City of St. Joseph v. Union Railway Co., 116 Mo. 636, 22 S. W. 794; Case v. Sipes, 280 Mo. 110, 217 S. W. 306; Tomnitz v. Employers' Liability Assurance Corp., 343 Mo. 321, 121 S. W. (2d) 745; Soukup v. Employers' Liability Assurance Corp., 341 Mo. 614, 108 S. W. (2d) 86.

We do not regard the position as tenable in view of our holding on the other point of alleged conflict. The language of the policy was subject to construction, and, therefore, as respondents pointed out, they were concerned with the issue as to whether or not Winton Meyer "was so employed or was such an employee as that he was excluded from the coverage of the policy by the restrictive words 'not employed' etc."—a question not adjudicated in the prior suit.

Our writ was improvidently granted, and should be quashed. It is so ordered. All concur.