## STATE FARM MUT. AUTOMOBILE INS. CO. v. BROOKS et al.

### No. 12524.

Circuit Court of Appeals, Eighth Circuit.

July 6, 1943.

Thomas E. Deacy, of Kansas City, Mo. (Milligan, Kimberly & Deacy, of Kansas City, Mo., and Seller, Blanchard & Van Fleet, of Joplin, Mo., on the brief), for appellant.

Emerson Foulke and Helen Redding, both of Joplin, Mo. (Henry Warten, Kelsey Norman, and Roy Coyne, all of Joplin, Mo., on the brief), for appellees.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

The insurance company brought this action against one of its motor truck public liability policyholders and persons asserting claims under the policy, to obtain declaratory judgment that liability for certain personal injuries, which were fatal to one boy and serious to another, resulting from an accident to the insured truck on which they were riding was not within the coverage of the policy. The trial was to the court and declaratory judgment was entered that "plaintiff is not entitled to a declaration of non-liability under its policy herein, but that it became and was the duty of the plaintiff to meet its obligation under its policy herein by defending as therein provided the suits brought against its policyholder, and responding on behalf of its policyholder to costs and damages." Judgment had been obtained in the State court against the policyholder on account of the death and the insurance company was ordered to pay that judgment with interest, costs and an attorney's fee. The suit of the living boy was pending and the trial court reserved jurisdiction to order payment if there should be a recovery therein. The insurance company appeals. It made a motion for judgment in its favor at the conclusion of all the evidence and contends that the trial court erred in overruling the same. Its position is that at the time of the accident in question the boys who were riding on the truck covered by its policy, and were injured (one of them fatally) in the accident, were employees of the insured, engaged in the business of the insured, and that liability in respect to them and their injuries was excluded from the coverage of the policy by the provision, the relevant part of which reads as follows: "This policy does not apply: * * * to bodily injury to or death of any employee of the insured while engaged in the business * * * of the insured."

It is contended for the appellees that at the time of the accident the employment of the boys by the insured was "occasional, incidental or casual employment" and that they were not then "employees of the insured" within the meaning of the policy and also that they were not then "engaged in the business of the insured". It is also argued that as they were minors whose contracts were voidable, their contract of employment should be disregarded in this action.

The court on hearing the evidence found as facts that:

"1. On October 11, 1940, plaintiff issued to the defendant A. F. Brooks, doing business as East Side Ice & Fuel Company, 1101 Broadway, Joplin, Jasper County, Missouri, its policy of liability insurance upon a Chevrolet truck owned by the said A. F. Brooks and used by him in carrying on his business.

"2. The policy contained, among other coverages, one for 'bodily injury liability' with a limit of $10,000 in favor of each person and a maximum of $20,000 for each accident. An obligation of the plaintiff, among others, is as follows:

" '1. * * * A. To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages * * * because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile.'

"There were several 'Exclusions' clauses in the policy; one of which is as follows:

" 'This policy does not apply: * * * to bodily injury to or death of any employee of the insured while engaged in the business * * * of the insured.'

"3. Plaintiff's policyholder was engaged in operating, among other things, a fuel yard at the address mentioned. It was a part of such operation to obtain wood from points outside of Joplin. Late in August and early in September of 1941, Raymond Hayes and Curtis Palmer, both boys of sixteen years of age, accepted temporary employment at the place where the wood was obtained, to collect it and pile it for loading and transportation in the truck covered by the policy, to the assured's fuel yard at Joplin. On September 3, 1941, and while the policy covering the truck was in force, Raymond Hayes and Curtis Palmer were riding home in the loaded truck when an accident occurred involving said truck and resulting in the death of the said Raymond Hayes and in injury to the said Curtis Palmer. At the time of the accident the said Raymond Hayes and Curtis Palmer were not engaged in the performance of the duties for which they were employed by the said A. F. Brooks, but were riding in the truck under an arrangement that they would be taken to and returned from the place of employment in the assured's said truck. * * *

"5. Plaintiff was duly notified of the accident and of the claims interposed because of the death of the one and the injury to the other of the parties named. Subsequently, suits were instituted against plaintiff's policyholder, the said A. F. Brooks and his son, the defendant James Brooks, who is an additional assured under said policy, by the defendants William Fred Hayes and Maggie May Hayes, parents of the deceased Raymond Hayes, and by the defendant Curtis Palmer, by his next friend, Robert Hoops. These suits were brought in the state court to recover damages respectively for the death of the said Raymond Hayes and injury to the said Curtis Palmer.

"6. Plaintiff's policyholder called upon the plaintiff under the terms of the policy to defend said suits. Based upon its independent inquiry and investigation into the facts, plaintiff categorically denied liability and refused to defend the suits instituted as aforesaid against its policyholder. The result of this was that its policyholder was required to employ counsel in both suits. The testimony was that a reasonable attorney's fee for counsel thus employed by plaintiff's policyholder would be $250 for each case. The suit by the defendants, William Fred Hayes and Maggie May Hayes, has resulted in a judgment in their favor in the sum of $3,000 against plaintiff's policyholder. This judgment resulted from a 'trial by court and judgment in favor of plaintiffs and against defendants in the sum of $3,000 and costs.' There was no evidence to indicate that this was a collusive judgment between plaintiff's policyholder and said plaintiffs, but on the contrary, that it was entered in good faith."

And at the instance of the plaintiff, it also found as facts that:

"V. On the 3rd day of September, 1941, Raymond Hayes son of defendants, William

Fred Hayes and Maggie May Hayes, and defendant Curtis Palmer were in the employ of A. F. Brooks, doing business as East Side Ice & Fuel Company, and that on said date, Raymond Hayes and Curtis Palmer while in the employ of said A. F. Brooks, and while engaged in the business of said A. F. Brooks were riding in the automobile-truck hereinbefore referred to and described in the policy of insurance heretofore mentioned, being at the time driven and operated by defendant, James Brooks, under the personal direction and control of defendant, A. F. Brooks, and was being used in the business of said A. F. Brooks. When said automobile-truck which was being driven along and upon Highway H, a public highway in Newton County, Missouri, reached a point approximately ½ mile south of Aroma, Missouri, it overturned and defendants, Curtis Palmer and Raymond Hayes, received injuries as a result thereof. Raymond Hayes died as a result of the injuries he received.

"VI. At all times involved in this action defendant A. F. Brooks, doing business as East Side Ice & Fuel Company, was engaged in operating a wood yard, dealing, among other things, in stove wood. In the course of said business it was necessary for him each summer to procure a supply of stove wood for the coming winter. Some time prior to August 31, 1941, defendant, A. F. Brooks, had bought a slab pile located about 35 miles from Joplin just off of Highway H for the purpose of procuring therefrom his winter's supply of stove wood. It was the usual procedure followed in this connection to cut lumber at the site of the slab pile to suitable lengths with a portable power saw, load the cut wood on a truck and haul it to the wood yard. All of this was necessary to and a part of A. F. Brooks' regular business.

"VII. On or about August 31, 1941, defendant Brooks hired Curtis Palmer and Raymond Hayes to assist in sawing and bringing in the wood on the slab pile located near Boulder, Missouri. It was a part of their duties to bring lumber from the slab pile to the saw located on the job, to assist in loading the truck with wood after it had been cut and, if needed, to assist in unloading the wood at the wood yard in the evening. They were able to cut and transport two truck-loads of fire wood a day. Raymond Hayes and Curtis Palmer did not assist in unloading the first load each day but remained at the slab pile until the second load was cut. However, they often did assist in unloading the second truckload each day.

"Defendant Brooks agreed to pay Raymond Hayes and Curtis Palmer the sum of $1.00 per day for this service. The employment was to last until the slab pile was sawed and hauled to the wood yard. It was contemplated that this would take at least a week and perhaps longer. They were instructed to and did report each morning for work at the wood yard and were hauled by truck to and from the slab pile in question. It was understood between them and defendant, A. F. Brooks, that they would be carried to and from the slab pile as they had no other means of transportation." [1]

■ Though some question is made of the foregoing findings, our examination of the record satisfies us that they are in accord with the evidence and reflect all the facts material to decision. As the insurance contract on which the declaratory judgment is sought was a Missouri contract, the law of that state is controlling.

■ It is contended for the insurance company that the words "any employee", appearing in the exclusion clause of its policy, should be read broadly and literally to mean any and every person rendering service of any kind to the insured in his

[1] Although there might seem some slight verbal inconsistency between the finding (No. V) that Raymond Hayes and Curtis Palmer were at the time of the accident riding in the truck "while in the employ of said A. F. Brooks and while engaged in the business of said A. F. Brooks", and the finding (No. 3) that at the time of the accident they "were not engaged in the performance of the duties for which they were employed by the said A. F. Brooks", there is no conflict in the evidence. As riders on the truck they were passive, but the business engaged in was that of A. F. Brooks and the approximate 35 miles of travel between the slab pile and the fuel yard was necessary for that business.

So as to finding (No. 3), "that they were riding home in the loaded truck", and the finding (No. VII), that they "did report each morning for work at the wood yard and were hauled by truck to and from the slab pile in question." Joplin was their home town but the wood yard in Joplin was the destination of the truck and the wood which was to be unloaded there.

business, while the appellees would have the meaning restricted to include only persons in continuous regular or permanent employment therein. We think the Missouri decisions have settled that the word "employee" as used in this policy clause is subject to interpretation by the courts to the extent that it is not to be deemed absolutely inclusive of any and every person who may happen, at the time of an, accident, to be rendering some service to the insured in his business at his direction. But those decisions also indicate the kind of situations where interpretation may be called for. It is recognized that generally the insured and all the persons who are working for him for wages in his business are excluded from the insurance. A cardinal object of the insurance is to distinguish between the public and those engaged in the business, and to include the former and to exclude the latter. But in the leading case of Daub v. Maryland Casualty Company, Mo.App., 148 S.W.2d 58, illustrating the exceptional situation, it appeared that the insured, under a policy insuring against liability for injuries suffered on his premises by any person or persons "not employed" by him, was working about his house and undertook to clean some leaves out of the gutters and downspouts. He called on a sixteen year old boy to stand on and steady the ladder for him, and the boy, while so doing, suffered an accidental injury. Although the boy had done some other chores around the premises on occasions and had been given small sums in recognition, it was held by the St. Louis Court of Appeals that the boy holding the ladder was a person "not employed" by the insured within the meaning of the policy at the time of the accident, and the Supreme Court of Missouri, in State v. Hughes, 349 Mo. 1142, 164 S.W.2d 274, 276, quashed the certiorari taken to reverse the decision. In these two opinions the courts sought a proper characterization of the tasks the boy did on the premises at the insured's direction and found them to be within the description "occasional, incidental, or casual employment". Their performance did not constitute him an employee or one employed in the sense of the exclusion of the policy.

The trial court [43 F.Supp. 870, 872] was of the opinion that the facts in this case justified a similar conclusion in respect to the boys involved in the accident here and determined that their "alleged employment" "should be described by the words, 'occasional, incidental, or casual employment' ", so that they "were not employees of plaintiff's assured within the purview of the policy."

But we think that the facts in the Daub case are in contrast to those presented here and that the conclusion of the trial court was erroneous.

■ Although the employment of the boys in this case contemplated no more than a week's work, the work they were hired to do, and were engaged in, was not a mere chore, but was a substantial, ordinary, recurring and necessary part of the insured's regular business of obtaining wood at his yard in Joplin and selling it there for fuel. The wage of the boys was fixed at a dollar a day and was a compensatory wage. Though in a sense the obtaining, transporting, and unloading of the wood to be sold as fuel might be called incidental to the fuel business as a whole, they constituted a substantial part of that business. Nor may the work be regarded as casual. Sonnenberg v. Berg's Market, 227 Mo.App. 391, 55 S.W.2d 494; March v. Bernardin, 229 Mo.App. 246, 76 S.W.2d 706; Carrigan v. Western Radio Company, 226 Mo.App. 468, 44 S.W.2d 245. It involves steady, continued application throughout the days and until completion. The thirty-five miles of travel by the truck between the yard at Joplin and the slab pile was also clearly within the employment of the boys in the business. The appellees have cited cases in which such transportation was not so included, as in Green v. Travelers Insurance Company, 286 N.Y. 358, 36 N.E.2d 620, where berry-pickers employed on a piece basis were free to go to and come from the fields as they chose, but were given a ride as an accommodation. Here the boys had no other means of getting to the slab pile and their transportation back and forth was contemplated in the contract of employment and was a necessary part of the insured's business.

In Sylcox v. National Lead Company, 225 Mo.App. 543, 38 S.W.2d 497, 499, a plaintiff was injured while alighting from a bus furnished by the employer to transport the plaintiff and fellow employees to their homes from their work. The court said: "If the right to transportation is given, either positively or inferentially, by the terms of the contract, the employment begins when the employee boards the bus to go to the scene of his labor; it continues

throughout the entire period of transportation; and it terminates when he leaves the bus. * * * the courts hold almost unanimously that, even though the employee is not paid for the time spent on the bus, he is yet in the course of his employment, if he rides by the employer's order, or with his knowledge and acquiescence * * * that transportation to and from work may well be one of the incidents of the employment, and an accessory, collateral, or subsidiary part of the contract * * *." To the same effect, Howes v. Stark Bros., etc., Co., 223 Mo.App. 793, 22 S.W.2d 839; Johnson v. Ætna Casualty & Surety Co., 5 Cir., 104 F.2d 22.

The minority of the boys at the time of the accident is not material to the inquiry whether they were, as a matter of law, to be deemed members of the public covered by the policy, or employees engaged in the business of the insured. What was done determined their status as employees.

It is observed that the determination of the trial court as to the description which should be applied to the employment of the two boys was designated a finding of fact, but it was plainly a conclusion of law, or of mixed law and fact. We hold that upon the facts found specially, the claims asserted against the insured were not, as a matter of law, within the coverage of the policy, and that the plaintiff was entitled to declaratory judgment to that effect.

Reversed with direction to enter judgment in accord with this opinion.