GOLDBERG, APPELLANT, *v.* CITY OF CINCINNATI ET AL., APPELLEES.

(No. 11195—Decided June 22, 1970.)

Mr. *Jerome Goldman,* for appellant.
Mr. *William A. McClain,* Mr. *Thomas Crush* and *Mr. Philip Olinger,* for appellees.

*Per Curiam.* This is an appeal on questions of law and fact from a judgment of the Court of Common Pleas of Hamilton County.

Plaintiff, as a resident and taxpayer of the city of Cincinnati, filed a petition in which he alleged that certain employees of that city "failed to report for duty, were wilfully absent from their positions, engaged in a stoppage of work * * * for the purpose of inducing, influencing and coercing a change in the conditions, compensation, rights, conditions and obligations of their employment and of intimidating and coercing and unlawfully influencing others

from remaining in, and from assuming specific employment, and thereby engaged in a strike as defined by Section 4117.01 of the Revised Code of Ohio.''

It is claimed further that the city of Cincinnati, through its officials, was intimidated and coerced into entering into an agreement with representatives of those on strike, under the terms of which such persons were reemployed and their compensation increased.

Plaintiff prays for an order to restrain the city and all its officers from executing or performing the agreement and from paying any increased compensation, direct or indirect, in violation of R. C. Chapter 4117.

The defendants named were the city of Cincinnati, the City Manager, the Director of Finance, the Treasurer, and the City Solicitor. Collectively, such defendants filed an answer in which each and every allegation of the petition was denied.

The evidence before us, *de novo,* is the same as that presented by all parties on the hearing below, and upon examination and consideration of that evidence we find that there is virtually no dispute as to the controlling facts.

Firstly, it is clear that certain employees of the city of Cincinnati, as members of a labor organization, met, voted and determined to go on strike, thereafter notifying the leadership of the union of that decision. Representatives of the union conveyed to the city the advice that the strike would continue until an agreement satisfactory to the union had been reached.

Secondly, the city knew the employees absenting themselves from work were on strike. Upon the hearing, it was stipulated and, therefore, is stipulated here that the employees did go out on strike January 5, 1970, and remained on strike until after the Memorandum of Settlement (plaintiff's Exhibit number 1) was signed on February 5, 1970. Further, the City Manager testified that ''some fourteen hundred employees were on strike,'' and that he understood in his dealings with the employees and their representatives that the reason they were out on strike was to influence and induce the city to change its conditions of

employment and compensation, and that they did not return to work until February 11, 1970.

The question squarely presented is: Can a public employee strike?

At common law, it is unlawful for public employees to strike. This precept was recognized and some of the reasons underpinning it pointed out in *Cleveland* v. *Division 268,* 57 Ohio Law Abs. 173, at page 176:

"* * * Under the common law * * * there is no right to strike on behalf of public employees, for many reasons, some of which at least, might be paraphrased in the language of several of the decisions, that it is a means of coercing the delegation of the discretion which a public board or public body must exercise in the fulfillment of its duties."

R. C. Chapter 4117 (The Ferguson Act) is an expression of the common law. *Cleveland* v. *Division 268, supra.* The Ferguson Act is constitutional both under the Ohio Constitution and the Constitution of the United States. *Abbott* v. *Myers,* 20 Ohio App. 2d 65, paragraph four of the syllabus of which states:

"The Ferguson Act does not violate free speech, violate procedural due process, violate the requirements of definiteness, constitute a bill of attainder, or vest judicial power in an officer or body having no authority to exercise judicial power, contrary to the provisions of either the Constitution of Ohio or the Constitution of the United States."

R. C. 4117.02 provides, in part: "No public employee shall strike."

R. C. 4117.04 does not apply to the case at bar. That section defines what conduct on the part of a public employee shall be deemed to constitute a strike. It has been stipulated that the employees of the city of Cincinnati were on strike. Consequently, the further proviso of R. C. 4117.04 that notice shall be sent to an employee who unlawfully fails to report for duty that he is on strike does not pertain here. The acts of the employees, established by stipulation binding upon the parties to this litigation

and by the evidence, constituted a strike as defined by R. C. 4117.04. Therefore, to hold that the city should have sent notice to employees that they were striking illegally, when those employees had already informed the city they were so striking, would be to require the city to do a vain act. The deliberate failure of the city to send the notice alluded to in R. C. 4117.04 does not vitiate the force of the Ferguson Act in the instant case.

It is argued to us that the city cannot have the Ferguson Act imposed upon it when its officials chose not to invoke its provisions. However, R. C. 4117.02 provides further:

"No person exercising any authority, supervision, or direction over any public employee shall have the power to authorize, approve, or consent to a strike by one or more public employees, and such person shall not authorize, approve, or consent to such strike."

Therefore, applying the restrictions of the last quoted Code provision, it is apparent that no one in authority over the public employees here involved could authorize, approve, or consent to the strike. The vacillation of the city officials demonstrated by the testimony cannot be justified in law. Their refusal to follow the controlling statutes when the employees themselves advised the city they were on strike, when the officials knew the employees had struck illegally causing the officials to seek and to obtain injunctive relief from the courts, and when the officials understood from the outset the purpose of the strike was to induce, influence or coerce a change in conditions and compensation, amounts to a passive or implied consent to such strike. Upon the facts here, uncontroverted and stipulated as they are, the city had no choice but to obey the directive of the Legislature.

When the city stipulates that it knew the employees were striking, it cannot be heard to say that it has a discretion to choose to call the illegal acts of the employees by some other name or refuse to recognize what it has stipulated in relation to the strike.

R. C. 4117.03 sets forth the conditions upon which an

employee who had gone on strike may be reappointed or re-employed, one of which is:

"(A) His compensation shall in no event exceed that received by him immediately prior to the time of such violation."

Again, it has been stipulated that there was an increase in pay of the various employees of the city over what they had been receiving immediately prior to the strike. Such stipulation is fully supported by the exhibits introduced here. Therefore, to grant and to pay the increments violates the law.

R. C. 4117.03 (B) provides:

"His compensation shall not be increased until after the expiration of one year from such appointment or reappointment, employment or re-employment."

Resultantly, the city of Cincinnati and all its officers must be and are restrained and enjoined from executing or performing the agreement so as to pay any compensation, direct or indirect, in the form of salary, wages or otherwise to any and all persons who were employees of the city and then participated in a strike against the city in excess of that compensation received by such person immediately prior to such strike for at least one year from the date of appointment, reappointment, employment or re-employment of such person.

*Judgment accordingly.*

SHANNON, P. J., HILDEBRANT and HESS, JJ., concur.