**JEFFERSON COUNTY TEACHERS AS-
SOCIATION et al., Appellants,**

**v.**

**BOARD OF EDUCATION OF JEFFERSON
COUNTY, Kentucky, Appellee.**

Court of Appeals of Kentucky.

Oct. 30, 1970.

Rehearing Denied March 19, 1971.

Charles C. McConnell, Louisville, for Jefferson County Teachers Ass'n, Kentucky Education Ass'n, Wallace Cantrell, Thomas D. Belew, Mary Lou Jackson, James O. Halcomb, Jr.

William Friedlander, Louisville, for Louisville and Jefferson County Federation of Teachers, Local 672.

E. Gerry Barker, E. Preston Young, Louisville, for appellee.

CLAY, Commissioner.

This is an appeal from a judgment permanently enjoining appellants (teachers' organizations and individual teachers in the Jefferson County school system) from participating in a concerted work stoppage or strike in the public schools of Jefferson County. It is contended the injunction violated appellants' statutory and constitutional rights and that no irreparable injury was shown.

On February 24 of this year, the school teachers in the Jefferson County school system failed to report to work, and there is no question but that they conducted for four days what must be characterized as a strike. They returned to work upon the issuance of a temporary injunction in this action.

Before reaching the controlling question before us, it appears appropriate to give some background concerning strikes by public employees. Under the common law it is recognized that public employees do not have the right to strike or to engage in concerted work stoppages. 48 Am.Jur.2d, Labor and Labor Relations, § 1361 (page 848); Witchita Public Schools Emp. U., Local No. 513 v. Smith, 194 Kan. 2, 397 P.2d 357 (1964); Anderson Fed. of Teachers, Local 519 v. School City of Anderson, Ind., 254 N.E.2d 329 (1970); Goldberg v. City of Cincinnati, 23 Ohio App.2d 97, 261 N.E.2d 184 (1970). Norwalk Teachers' Association v. Board of Education, 138 Conn. 269, 83 A.2d 482, 31 A.L.R.2d 1133 (1951), is a leading case on this subject. It involved the question of whether or not a school teachers' association could engage in a strike to gain its objectives. In answering this question in the negative, the court observed (page 484 of 83 A.2d):

"Under our system, the government is established by and run for all of the people, not for the benefit of any person or group. The profit motive, inherent in the principle of free enterprise, is absent. It should be the aim of every employee of the government to do his or her part

to make it function as efficiently and economically as possible. The drastic remedy of the organized strike to enforce the demands of unions of government employees is in direct contravention of this principle."

Except in a rather oblique manner, the appellants do not dispute this general rule.

The federal government, and some states, have confirmed by statute this principle and specifically denied to public employees the right to strike. The National Labor Relations Act of 1935, the Fair Labor Standards Act of 1938, and the Labor Management Relations Act of 1947 exclude federal employees from the collective bargaining rights secured in private employees. New Jersey, Michigan and Florida by statute expressly forbid public employees to strike. While our attention has not been called to any legislation of other states *authorizing* strikes by public employees, we may assume for the purpose of this case that such legislation would be valid. On this theory it is appellants' contention that our legislature has recognized such right in KRS 336.130. This statute specifically provides in part:

"(1) Employes may, free from restraint or coercion by the employers or their agents, associate collectively for self-organization and designate collectively representatives of their own choosing to negotiate the terms and conditions of their employment to effectively promote their own rights and general welfare. Employes, collectively and individually, may strike, engage in peaceful picketing, and assemble collectively for peaceful purposes."

The subject matter of this Chapter 336 is "Department of Labor". It does not contain a definition of "employes". It is appellants' position that this word encompasses all employees, both public and private. If so, appellants would have a legislatively granted right to strike.

In the light of our earlier discussion concerning the distinction recognized in

the common law and by statutes between private and public employees with respect to their right to strike, it is our opinion that the word "employes" as used in this statute is ambiguous. In Stone v. United States, D.C.Pa., 55 F.Supp. 230, 233 (1943), it was stated that in construing the meaning of the term "employee", " * * * it is essential to understand the objectives and scheme of the Act in order to determine the congressional intent." It was also said in that opinion that this term is used generally to distinguish between one who performs services for another and one who serves the public at large.

■ In Knight v. Board of Administration of State Emp. Retirement System, 32 Cal.2d 400, 196 P.2d 547, 548, 5 A.L.R.2d 410 (1948), it was observed that the term "employes" has no fixed meaning which must control in every instance. In State ex rel. Maryland Casualty Co. v. Hughes, 349 Mo. 1142, 164 S.W.2d 274, 277 (1942), it was said that this term may have different meanings in different connections. We think an examination of the vast number of cases cited in Words and Phrases, Permanent Edition, Volume 14, under the subject "Employee" demonstrates quite persuasively that this term does not have such a fixed meaning in the law that it is free of ambiguity. This being so, it is proper for us to seek the legislative intent carried into KRS 336.130 by reference to the official Acts of the General Assembly. Fidelity & Columbia Trust Co. v. Meek, 294 Ky. 122, 171 S.W.2d 41 (1943). In so doing our problem is solved.

In 1940 the legislature enacted the Hunnicutt Act as Chapter 105 of the Acts of the General Assembly. This Act related to employer-employee relations, and recognized the right to collectively bargain, strike, picket, etc. Article V of this Chapter provided specifically that there were exempted from all of the provisions of the Act " * * * employees of the United States, the State and any and all political subdivisions or agencies thereof". In Baldwin's February 1941 Supplement to Carroll's Kentucky Statutes this Act was incorporated as Chapter 42bb. The exemption provision (Article V) appears as section 1599c–39.

In 1942 the statutes were completely revised as the Kentucky Revised Statutes. In the revised statutes, Carroll's Chapter 42bb was incorporated in KRS Chapters 336, 337 and 338. What had been Carroll's section 1599c–39 (Article V) was compiled in KRS 336.050, 337.010 and 338.010. The exemption provision was incorporated in KRS 337.010(2), for Chapter 337, relating to "Wages and Hours", and in KRS 338.-010(3), for Chapter 338, relating to "Safety and Health of Employes", but was not included in KRS 336.050, nor in any section of Chapter 336.

■ The original Act pertaining to employer-employee relations clearly and expressly excluded public employees from the granted right to strike. The apparently inadvertent omission of this exclusion in Chapter 336 when the statutes were revised cannot be held to have changed the legislative policy and the law. Therefore appellants cannot properly claim the legislature has granted them such right, and their principal contention must fall.

It is next contended that denial of the right of public school teachers to strike violates both the federal and Kentucky constitutions. There is an allegation that the denial of this right constitutes a violation of due process principles, but appellants fail to point out in what respect they have been deprived of due process. This argument seems to be based on the assumption that public employees have the constitutional right to strike, which is an unfounded assumption and begs the question.

It is said that to deny the right to strike deprives appellants of the equal protection of the law under the Fourteenth Amendment to the Constitution of the United States. However, they admit in their brief that valid distinctions may be made between public and private employees in this area. The equal protection question has

been considered in several cases. In City of Detroit v. Division 26 of Amalgamated Ass'n., 332 Mich. 237, 51 N.W.2d 228 (1952), the constitutionality of a statute which specifically prohibited striking by employees of the State of Michigan was questioned. It was therein held that such a statute did not violate any provisions of the Constitution of the United States or the constitution of the state, including due process and equal protection of the law. In School Dist. for City of Holland, Ottawa and Allegan Counties v. Holland Educ. Assn., 380 Mich. 314, 157 N.W.2d 206 (1968), the argument was made that the recognized rights of private employees which had developed in recent years had eroded the basis of the court's decision in the City of Detroit case. The Michigan Supreme Court reaffirmed the earlier determination that the legislature could constitutionally prohibit public employees from striking.

■ In Abbott v. Myers, 20 Ohio App. 2d 65, 251 N.E.2d 869 (1969), an Ohio statute which specifically provided "No public employee shall strike" was held valid. The constitutionality of such a statute was also upheld in Fairview Hospital Ass'n v. Public Building Serv., Etc., 241 Minn. 523, 64 N.W.2d 16 (1954). As we have heretofore noted, there is a reasonable basis for distinguishing between private and public employees, particularly in this area. Therefore, to treat them differently is not a denial of equal protection in the constitutional sense.

■ It is further contended that the denial of appellants' right to strike constitutes a violation of the Thirteenth Amendment to the Constitution of the United States and § 25 of the Kentucky Constitution in that it imposes on appellants involuntary servitude. This contention is adequately answered in City of Los Angeles v. Los Angeles Building and Construction Trades Council, 94 Cal.App.2d 36, 210 P.2d 305 (1949); In Re Block, 50 N.J. 494, 236 A.2d 589 (1967); and Pinellas County

Classroom Teachers Ass'n. v. Board of Public Instr., Fla., 214 So.2d 34 (1968). The basis of these decisions is that an injunction of the kind before us does not "compel performance of personal service against the will of the employee" because he can terminate his contract if he so desires.

■ It is further contended the injunction violates appellants' constitutional rights of free speech and public assembly. Such rights are not absolute but are limited by the countervailing rights of others. The injunction enjoins appellants from "participating in a concerted work stoppage or strike by the teachers in the public schools of Jefferson County". It prohibits the commission of illegal acts, and the rights of free speech and public assembly do not license violation of law. In City of Los Angeles v. Los Angeles Building and Construction Trades Council, 94 Cal.App. 2d 36, 210 P.2d 305, 309 (1949), it is said:

"* * * illegality of purpose provides a complete basis for injunctive relief against conduct which would otherwise be deemed a permissible exercise of fundamental rights. Where such illegality consists of violation of settled public policy, as well as in other cases of illegal conduct, the injured party has a right to be protected from the imminent harmful consequences of such action."

■ It is next contended that because two of the appellant organizations were operating under a negotiating agreement with appellee, this gave them the same bargaining rights which unions have in private industry, including the right to strike. We are cited no authority for the proposition that the right to collectively bargain gives the right to strike, particularly when the right to strike is otherwise inhibited. It may be pointed out that the contract between one of the appellants and appellee specifically provides for arbitration, and by implication this would foreclose the right to strike as a means of settling a grievance. See Local 174, Teamsters, Chauf-

feurs, Warehousemen, and Helpers of America v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

It is finally contended appellee failed to show such irreparable injury resulting from this strike as to justify an injunction. The record contains ample proof of serious and irreparable impairment of the school system of Jefferson County (of which a court probably could take judicial notice). This contention is completely lacking in merit.

The judgment is affirmed.

All concur.