CITIZENS INSURANCE COMPANY OF NEW JERSEY, a corporation, Respondent,

v.

KANSAS CITY COMMERCIAL CARTAGE, INC., a corporation,

v.

COMMERCIAL UNION INSURANCE COMPANY OF NEW YORK, a corporation, Appellants.

No. WD 30720.

Missouri Court of Appeals, Western District.

Dec. 30, 1980.

Motion for Rehearing and/or Transfer Denied Feb. 2, 1981.

Application to Transfer Denied March 9, 1981.

James H. Ensz and Arnold N. Shanberg, Kansas City, for appellant Kansas City Commercial Cartage, Inc.

R. Frederick Walters of Linde, Thomson, Fairchild, Langworthy & Kohn, Kansas City for appellant Commercial Union Insurance Co. of New York.

Robert M. Sommers of James, Odegard, Millert & Houdek, Kansas City, for respondent, Citizens Insurance Co. of New Jersey.

Before KENNEDY, P. J., and PRITCHARD and SWOFFORD, JJ.

PER CURIAM:

This is an insurors action, under a motor truck cargo insurance policy, for money had and received. Insured filed its answer and with leave, impleaded its employee fidelity insuror. Judgment was for plaintiff insuror against insured and for insured against the fidelity insuror. Insured and fidelity insuror appeal. The judgment is reversed with directions.

■ The matter was tried to the court upon pleadings, documents and stipulations with such evidence being supplemented by testimony of the parties. Neither party requested written findings of fact or conclusions of law, and absent such request, none are required of the trial court, see *Skinner v. Henderson*, 556 S.W.2d 730 (Mo. App. 1977).

■ Review of this matter is pursuant to Rule 73.01 as that rule has been interpreted by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), and the judgment is to be affirmed unless said judgment is unsupported by substantial evidence, is against the weight of the evidence, erroneously declares the law or erroneously applies the law.

For purposes of this appeal, the parties herein are described and referred to as respondent (hereinafter referred to as Citizens), appellant insured (hereinafter referred to as Cartage) and appellant fidelity insuror (hereinafter referred to as Commercial).

On appeal, Cartage presents four points of error which, in summary, allege the trial court erred in finding (1) there was substantial evidence that Donald LaCore was an employee of the insured, thereby excluding coverage at the time of the theft; (2) as a matter of law, that coverage is excluded when a loss is caused by a casual employee; (3) as a matter of law, that coverage was excluded when a loss is caused by a dishonest employee not receiving compensation for and is not actively engaged in the insured's employment at the time of the theft; and (4) that the loss was not caused by or did not result from persons to whom property may be entrusted or caused by any dishonesty of any attendant or attendants.

Commercial presents five points of error, which in summary allege (1) the trial court erred in finding that Donald LaCore was an employee within the exclusionary clause of the Citizens policy; (2) the trial court erred by finding that the word employee within the exclusionary clause of the policy applied to the status and activity of Donald LaCore; (3) the trial court erred in finding there was substantial evidence to conclude that Donald LaCore was an *employee* whether this word is construed to mean a casual, regular or an otherwise employee; (4) the trial court erred in granting judgment against Commercial because the policy issued by Commercial covered only losses caused by employees as the term *employees* is defined within its policy, and under the evidence, Donald LaCore was not within the definition of the term *employee*; and (5) the trial court erred in entering judgment against Commercial and to the favor of Cartage because the latter failed to comply with a condition precedent under the policy of Commercial upon failure of Cartage to file a verified proof of loss.

As can be observed from the alleged errors of Cartage and Commercial, some of these alleged errors are concurrent regarding the interests of appellants relative to respondent's position. Where such points are concurrent, they will be disposed of conjunctively and where errors appear inapposite to the interests of appellants, they will be disposed of separately.

The facts herein are not in dispute, so a brief summary of those facts suffices. Cartage is a local firm which transports merchandise for its customers. Citizens is the insuror of Cartage upon the latter's loss of property under Citizens' motor truck cargo policy. Commercial is the insuror of Cartage against loss experienced by Cart-

age as a result of any fraudulent or dishonest act of any employee of Cartage.

Between March 22 and March 24, 1968, a truck used by Cartage and containing merchandise was stolen from the business premises of Cartage. Cartage applied to Citizens for reimbursement for the loss and Citizens paid the full amount of the loss in the sum of $13,279.29, along with an agreement that if, as a result of the pending policy investigation, it was established that an exclusion in the policy of Citizens applied, the amount of the loss would be repaid by Cartage.

On October 31, 1969, an indictment was handed down against one Donald LaCore. Subsequent to this incident, LaCore confessed to having committed the theft. Following these events, Citizens made demand for repayment from Cartage upon the premise that LaCore was an employee of Cartage and by reason thereof, coverage of the loss was excluded under Citizens' policy. When demands for repayment were refused, this action followed.

This cause was initially disposed of by the trial court upon a partial summary judgment from which an appeal was taken. The appeal was ruled premature and the cause was remanded, see *Citizens Insurance Company of New Jersey v. Kansas City Commercial Cartage, Inc.*, 543 S.W.2d 532 (Mo.App. 1976). Upon remand, trial upon the merits followed from which this appeal issued.

In its memorandum judgment, the trial court found that LaCore was an employee of Cartage and therefore, the loss was excluded under the terms of the Citizens' policy. The trial court further found that the loss was covered under the employee fidelity policy of Commercial.

The only issue which lies before this court is whether or not LaCore was an employee of Cartage. Once that issue is determined, the applicable insurance coverage then attaches. Neither insuror denies coverage on the grounds that the policies were not issued or that the policies were not in full force and effect. Coverage is disclaimed by each insuror asserting responsibility to the other, and both disclaimers turn upon the definition ascribed to *employee* as it relates to LaCore.

■ At this juncture, Commercial's fifth point of error is taken up and ruled against it. The trial court correctly found that Commercial's denial of coverage was not because of Cartage's failure to file a proof of loss; rather, coverage was denied upon the terms of the policy. The trial court was correct in finding that the defense on the failure to file a proof of loss was waived by Commercial, see *Otto v. Farmers Insurance Company*, 558 S.W.2d 713, 720 (Mo.App. 1977) and *Asel v. Order of United Commercial Travelers of America*, 193 S.W.2d 74 (Mo.App. 1946).

Citizens had issued a motor truck cargo policy to Cartage, providing for "loss or damage to shipments of property in the possession of Cartage". The same policy contained an exclusionary clause which excluded coverage from loss "caused by or resulting from infidelity of the insured's employees or persons to whom the property may be entrusted ... and for loss or damage caused by the dishonesty of any attendant or attendants."

Commercial had issued an employee fidelity policy to Cartage which provided coverage to Cartage by agreeing "... to indemnify the insured against any loss of money or other property which the insured shall sustain through any fraudulent or dishonest act or acts committed by any of the employees, acting alone or in collusion with others." Within the Commercial policy, the term *employee* was defined as "... any natural person ... while in the regular service of the insured in the ordinary course of the insured's business during the bond period ..."

LaCore, the thief herein, worked for Cartage on August 19, 1967 and September 6, 7, 8, 12, 13, 15, 22, 26 and 29 of 1967. He then worked for Cartage on March 15, 18, 19, 22 and 25 of 1968. He was paid $3.56 per hour and was paid at the conclusion of each working day. Social Security taxes were withheld from LaCore's pay.

Through the course of pretrial proceedings by way of an affidavit dated 2–20–74, the general manager of Cartage explained the employment practice surrounding the hiring of LaCore and LaCore's status as a *casual worker.* This explanation, in summary, was as follows:

"... Among my responsibilities at Kansas City Commercial Cartage Company, Inc., was the hiring of various individuals to work on a day-to-day, as-needed basis. During those times when business was very heavy and our normal crew could not handle the work load, we would employ various individuals to assist us in such work as would be required that day. Usually, a man would either call us between 7 to 9 a. m., or stop by our office and ask whether or not there was work for that day. If there was work, we would hire him. At the time we hired him, he would be informed that this was only for the day and that he would be paid at the end of the day and that there would be no guarantee that he would be used for more than just a few hours or a complete day but just until we overcame the work load. At the end of each day, the man would be paid and told that we did not know whether we needed him until the next day and, if he was interested in working, to call us between 7 and 9 a. m. Each man knew these facts because I told him at the end of each day that he was terminated and not to expect continuing employment.

I was the person who hired Donald LaCore during the period of time he worked for us in March of 1968. On the Friday before the theft, Donald LaCore called me at our office and asked whether or not there was work for that day. I told him there was and that if he wanted to work he could come in around 9:00 or 9:30 a. m. He did, and came in around 9:45 a. m. and worked until 6:00 p. m. that day. At the end of the day, I paid him for his day's work and told him that I didn't know whether we would use him again or not and if he wanted to call again the next week, he could, but there would be no guarantee that we would have any work for him to do."

Cartage, by reason of its union contract, would hire no casual employees until all full-time employees were working. Depending upon the workload, Cartage would use various numbers of casual employees, and sometimes two or three weeks would lapse between such hirings. The union contract required that all casuals be paid at the end of each working day unless the casual employee requested his pay be withheld until the Friday of the workweek. The union contract further provided that once a casual employee worked twelve days within a thirty-day period, the casual employee was entitled to seniority status. This provision caused the establishment of company policy by Cartage not to keep a casual employee for more than ten days within a thirty-day period. This company policy prevented Cartage from having a full-time employee which Cartage did not need. Neither health, welfare nor pension benefits were paid to casual employees. Although casual employees were terminated at the end of each working day, they were paid the same hourly wage as full-time employees and performed the same job assignments as full-time employees.

LaCore had worked as a driver for Cartage during the first part of the day on March 22, 1968, but later in the day, was assigned to work on the docks. This placed him in a better position to know the contents and the value of the goods on the truck that was stolen. He was paid at the close of the work day (March 22, 1968) and given no assurance of future employment. The theft occurred between the eve of March 22, 1968 and March 25, 1968. LaCore worked for Cartage from 9:30 a. m. to 1:30 p. m. on March 25, 1968 when he left, complaining he was ill.

The president of Cartage testified that casual employees, when hired, worked in the ordinary course of the business of Cartage, however, were not considered regular employees of Cartage. He further, testified that at the termination of each working day, the casual employees no longer worked for Cartage, and this is what distin-

guished the casual employees from the full-time employees.

The record also includes an affidavit from an assistant United States attorney which disclosed that in LaCore's confession, La-Core had stated that he had seen the truck loaded with the merchandise and told a friend about the truck. The friend made plans for the sale of the merchandise, and LaCore and this friend went to the company. LaCore drove the truck away and the next day, unloaded the merchandise into a rented truck and abandoned the truck owned by Cartage.

With the exception of point 5 presented by Commercial, that point being ruled upon heretofore, appellants' alleged errors turn upon whether or not LaCore was an *employee* of Cartage and by reason thereof, whether the loss comes within the exclusionary clause of Citizens' policy. If La-Core was an *employee*, then such exclusion applies and *Citizens* has a policy defense, thus providing coverage for Cartage by virtue of the employee fidelity policy issued to Cartage by Commercial.

■ Disposition of this appeal calls for the construction of the insurance policies issued herein. The general rule applicable to the construction of insurance policies in our state is that where language within a policy is not ambiguous, such language is not subject to interpretation, see *Gossett v. Larson,* 457 S.W.2d 709 (Mo.1970). Alternatively, if policy language is capable of resulting in more than one meaning, any ambiguity therein is to be resolved to the favor of an insured, see *Kay v. Metropolitan Life Insurance Company,* 548 S.W.2d 629 (Mo. App. 1977); *Williams v. North River Insurance Co.,* 579 S.W.2d 410 (Mo.App. 1979) and *State ex rel. Mills Lumber Co. v. Trimble,* 327 Mo. 899, 39 S.W.2d 355 (1931).

■ In cases involving exclusionary clauses, such as the instant case, since such clauses endeavor to restrict coverage, the terms of such clauses are to be construed most strongly against the insuror and to the favor of the insured. It is incumbent upon the insuror to express its intention within such clauses by clear and unambiguous terms, see *State ex rel. Mills, supra; Meyer Jewelry Co. v. General Insurance Co. of America,* 422 S.W.2d 617 (Mo.1968); *Kay v. Metropolitan Life Ins. Co., supra,* and *Allison v. National Insurance Underwriters,* 487 S.W.2d 257 (Mo.App. 1972).

The term *employee* is subject to interpretation in our state, see *Daub v. Maryland Casualty Co.,* 148 S.W.2d 58 (Mo.App. 1941), cert. quashed, *State ex rel. Maryland Casualty Co. v. Hughes,* 349 Mo. 1142, 164 S.W.2d 274 (1942), wherein the court held that a clause within a policy covering damages to anyone *not employed* by the insured was ambiguous. For additional authority that the term *employee* is subject to interpretation, see the opinion in *State ex rel. Maryland Casualty Co. v. Hughes, supra,* and *State Farm Mutual Automobile Insurance Co. v. Brooks,* 136 F.2d 807 (8th Cir. 1943).

The theft occurred after LaCore was terminated from his employment with Cartage and as will be observed, such evidence becomes pivotal in the disposition of this appeal.

Appellants rely heavily upon *Daub v. Maryland Casualty Co., supra,* a case wherein the court found that a boy hired to do odd jobs for the insured was not an employee of the insured within the meaning of the term as used in the insured's policy, but that the boy was covered within the terms of the insured's policy. The court reasoned that the term *employee* commonly refers to continuous service, a permanent, regular and continued fixed tenure of employment. The court declared, 148 S.W.2d at 60, that "[t]he words, employed and employee, as used in insurance policies, generally denote regular employment, as distinguished from occasional, incidental or casual employment."

At this point, one might assume that the issue has been definitely decided and put to rest, but *Daub v. Maryland Casualty Co., supra,* must be contrasted with *State Farm Mutual Ins. Co. v. Brooks, supra,* and *Farm Bureau Mutual Insurance Co. v. Farmers Mutual Automobile Insurance Co.,* 360

S.W.2d 325 (Mo.App. 1962). Factually, the *Daub, Brooks* and *Farm Bureau* cases are distinguishable. However, the *Brooks* decision involved two boys who were employed for one week to collect, pile, load and transport wood for a fuel yard. While riding home in a loaded truck, they had an accident. The policy issued on the truck excluded coverage to "any employee". The court found the boys to be employees and hence, no coverage. The court held at 811, that "a cardinal object . . . is to distinguish between the public and those engaged in the business . . . It is recognized that generally the insured and all the persons who are working for him for wages in his business are excluded from coverage." In addressing the *Daub* decision, the court in *Brooks* emphasized 136 F.2d at 811 that although it was only a week's work, such work by the boys was not a mere chore as found in *Daub*, but that such work was a "substantial, ordinary, recurring and necessary part of the insured's regular business," and it was not casual because it involved "steady continued application until completion."

In the *Farm Bureau* decision, a boy was hired to help with haying. The employment was to last until the entire operation was completed. There was no time limit. The boy worked several hours per day for three days and was paid at the end of each day. The boy was injured while on the job and the court held that the boy was covered as an employee within a policy issued to the farmer covering injuries to employees. The court, in its finding, distinguished *Daub*, holding the boy was doing work which was a necessary part of the farmer's business, while in *Daub*, the work by the boy had nothing to do with the occupation of the insured, but rather was only odd chores. For a further decision holding that a boy bailing hay for only two days was an employee, see *Turnage v. State Farmers Mutual Tornado Insurance Co.*, 388 S.W.2d 342 (Mo.App. 1965).

■ If, in the instant case, this court was faced with only the determination of the term *employee* within the provisions of the insurance policies while LaCore was at work, and this court could disregard the fact that the theft occurred after work, it would appear that *Brooks* and *Farm Bureau, supra,* would control over *Daub, supra.* Where no dispute exists between the parties that the injured person was an employee, the meaning of *employee* is plain and unambiguous, see *Simpson v. American Automobile Insurance Company,* 327 S.W.2d 519 (Mo.App. 1959).

In the instant case, however, the parties are in dispute over whether or not LaCore was an employee. If consideration of LaCore's status is limited only to the time LaCore was actually at work, the evidence would support a finding that he was an employee.

The evidence submitted by Cartage established that LaCore was working in the regular course of Cartage's business performing ordinary job tasks, was employed at a set wage and was hired to do work relating to a "substantial, necessary and recurring part of the business" of Cartage. Even though LaCore was not assured of employment the following day, his job tasks were not odd jobs within the meaning of *Daub, supra.*

In the instant case, however, a second issue presents itself. LaCore was a casual employee and as such, was not reemployed from day to day. Rather, future employment was contingent upon the availability of work, plus the requirement that LaCore call each morning if he desired to see if work was available and if available, to undertake such work.

Since the theft occurred subsequent to the time LaCore finished his work on March 22, 1968 (hence his job status was terminated), was LaCore still an employee within the meaning of the exclusionary clause of Citizens' policy?

Appellants contend that since LaCore was employed contingently from time to time and since he had left work on the day of the theft, his employment prior to the theft had been terminated. Respondent argues that LaCore was an employee within the meaning of the exclusionary clause.

This precise issue has never been resolved by our own courts and by virtue thereof, this court resorts to our own rules regarding construction of insurance policies and other jurisdictions in seeking a resolution of the issue. Decisions from other jurisdictions provide this court insight into the matter. Our sister state of Michigan addressed the question in a case involving a service station attendant who burglarized the station where he worked. The attendant was employed from noon to 11:00 p. m. and burglarized the station during the early morning hours. The insuror had paid the loss and sought recovery of the payment, alleging an exclusion in the policy excluded burglaries by employees. The Michigan court held that the attendant was not an employee within the exclusionary clause of the policy, declaring that if the insuror had wanted to exclude acts outside the hours of employment, it could have specifically so worded its policy. The court, in relying upon the rule of construction to the favor of the insured, stated that an ordinary layman would not think of an employee as other than when he was acting in the work of the employer. The Michigan court further concluded that the burglar was not an employee within the meaning of that term as used within the policy, and that since the insuror had drafted the policy, the insuror could not now say it intended to exclude employees "while working or otherwise", see *Century Indemnity Co. v. Schmick*, 351 Mich. 622, 88 N.W.2d 622 (1958).

A decision by the Superior Court of New Jersey, *Del Vecchio v. Old Reliable Fire Insurance Co.*, 132 N.J.Super. 589, 334 A.2d 394 (1975), dealt with a situation involving a motor truck cargo policy which by its terms, contained an exclusionary clause denying coverage of loss when occasioned by an employee. The burglary (the loss) was committed by a person who had been employed by the insured for two years prior to the burglary. The New Jersey Court, in finding that the thief was not an employee within the exclusionary clause of the policy, based its ruling upon what the court declared to be two "cardinal rules" of interpretation of insurance contracts. The two

"cardinal rules" announced by the court were: (1) ambiguities must be resolved in favor of the insured and (2) exclusionary clauses are to be strictly interpreted. The court further concluded it was reasonable for the employer to expect his insurance coverage to extend to any entry of his premises when such premises were locked.

An Indiana decision, *Fidelity & Deposit Company of Maryland v. Pettis Dry Goods Co.*, 207 Ind. 38, 190 N.E. 63 (1934), involved an individual who was employed as a garage man but who had previously served as a watchman. The Indiana Court held that the employee was not excluded under the policy under a term of such policy which excluded coverage for burglaries committed by watchmen. The court reasoned that the clause was written in the present tense, not the past tense, and that the relationship must be a present one. It was argued that the employee would have had knowledge of the alarm system as a result of his prior duties as a watchman. The court, in contending with that argument, held that if the insuror had intended to exclude persons with superior knowledge of the alarm system, the insuror could have written the exclusion in that manner.

In the instant case, respondent argues that LaCore would have known of the merchandise on the truck by virtue of his employment.

While not completely analogous to the instant case, see *Schnurman v. Western Casualty & Surety Company of Fort Scott, Kansas*, 352 Mo. 650, 179 S.W.2d 31 (1944) wherein our courts found the injured person not to be an employee within the policy, and hence, coverage extended to the individual. The case involved a businessman from St. Louis who rode with his brother-in-law to Oklahoma. The brother-in-law had made the trip specifically on company business. The case involved a dispute as to whether or not the businessman (who was injured during the return trip) was an employee. The court concluded that he had been employed, but that his employment had terminated when the business transaction in Oklahoma had been completed. The court

concluded that on the return trip he was not an employee and therefore coverage was available.

As a contrast with the foregoing authority, the following cases hold that an employee is still an employee even if the act occurs beyond the hours of employment:

*R. I. Recreation Center, Inc., v. Aetna Casualty and Surety Co.*, 177 F.2d 603 (1st Cir. 1949)—In this decision, two employees were taken by armed strangers to their business and forced to open a safe at 2:00 a.m. The court held that the dishonesty policy which excluded loss by an employee applied. The court rejected the argument that the employee was coerced. The case did not address the specific argument raised herein as to whether or not the persons involved were employees because the act occurred outside the hours of work.

*C & H Plumbing and Heating, Inc. v. Employers Mutual Casualty Co.*, 264 Md. 510, 287 A.2d 238 (1972)—Here, an employee broke into the employer's business after work hours. The Maryland court, after pointing out that *Maryland had not adopted the rule in most jurisdictions that an insurance policy is to be most strongly construed against the insuror*, went on to hold that the employee was an employee within the terms of the policy. The court reasoned the average ordinary individual would regard an employee after quitting time as well as during the day.

*Durham Pepsi-Cola Bottling Co. v. Maryland Casualty Co.*, 228 N.C. 411, 45 S.E.2d 375 (1947)—This was a case involving the breaking into a safe at night after work hours. The court held that the fact the act occurred at a time other than during working hours did not destroy the employer/employee relationship. It should be noted this case is distinguishable in light of the policy, for in *Durham*, the policy was one covering theft by an employee, and the court found there was coverage.

In a unique manner, the question has arisen where the insuror, in anticipation of such losses, drafted the policy to include the wording excluding loss from a criminal act of an employee while "working or other-

wise". In that instance, the court held there was no ambiguity, for the insuror had clearly set forth its intent, and the matter of when the act occurred was of no importance, see *Sehon, Stevenson & Co. v. Buckeye Union Insurance Company*, 298 F.Supp. 1168 (S.D.W.Va.1969).

In the instant case, the evidence shows the wrongdoer LaCore to be something other than a nine-to-five employee. The evidence establishes LaCore was a casual employee who, if he worked at all, was only hired when the workload of Cartage demanded such hiring and LaCore was required to contact Cartage regarding possible work. In addition to and in combination with the workload, LaCore was hired each day he worked and terminated with pay at the close of each working day. While LaCore worked five days of the month of March, 1968 (the month of the theft), prior to that he had worked most recently 10 days during August and September of the year before (1967).

Under such circumstances, it becomes quite evident that the term *employee* is a highly ambiguous term. For example, was LaCore an employee during the months of October and December, 1967? Was he an employee on March 1, 1968? Stated another way, does a casual worker's status as an employee continue indefinitely even though he might work only a few days of each year?

■ Pursuant to the rules of construction previously referred to and followed by our courts, it is the opinion of this court that the term *employee* is ambiguous. It follows therefrom that ambiguities are to be construed in favor of an insured, and this is particularly applicable when exclusionary clauses are considered.

When the evidence of the instant case is considered in light of the rules of construction applicable to the policy in question, it must be concluded that LaCore was not an employee within the meaning of that term as used in the exclusionary clause of the Citizens' policy.

This court finds the ruling in *Century, supra,* and *Del Vecchio, supra,* to be persuasive in the instant case. When those rules are considered in conjunction with our rules of construction announced in *Kay, Williams, Allison, Mills* and *Meyer Jewelry, supra,* the conclusion is inescapable.

Under the facts of the instant case, it was reasonable for Cartage to have expected its policy to cover its losses while its premises were locked, see *Del Vecchio, supra.* It was just as reasonable for such an expectation to include coverage for loss brought about by one who very well could not have been employed by Cartage in the several months preceding the loss and by one who might never have been hired by Cartage in the future.

█ LaCore was a casual employee of Cartage when actually at work, but this relationship ended at the end of each working day. The evidence herein was not substantial to support the trial court's finding that LaCore was an employee within the meaning of the exclusionary clause of the Citizens' policy. Such finding violates the rule in *Murphy v. Carron, supra.*

The trial court entered its judgment for respondent against appellant Cartage in the sum of $13,279.29. In the same judgment, the trial court awarded judgment to the favor of appellant Cartage and against appellant Commercial in the sum of $10,000.00. The judgment sought and secured by appellant Cartage was contingent upon recovery by Citizens against Cartage.

Since the facts are not in dispute between the parties, the retrial of this cause would serve no purpose.

Point 5 presented by appellant Commercial has heretofore been ruled against Commercial. Upon a finding that there was no substantial evidence to support the trial court's judgment, the points presented by appellant Cartage are sustained and the points presented by Commercial, except for 5 above, are sustained.

The judgment of the trial court is in all respects reversed and the trial court is hereby directed to enter judgment to the favor of appellant Cartage and against respondent Citizens. The trial court is further directed to enter judgment to the favor of appellant Commercial and against appellant Cartage.